633 A.2d 1233

TIMES PUBLISHING COMPANY, INC.
and William McKinney, Appellants,

v.

Robert N. MICHEL, Sheriff of Erie County,
Pennsylvania and Donald Walter Schick.

TIMES PUBLISHING COMPANY, INC. and William McKinney

v.

Robert N. MICHEL, Sheriff of Erie County, Pennsylvania

v.

Donald SCHICK.

Appeal of Robert N. MICHEL, Sheriff of
Erie County, Pennsylvania, Appellant.

TIMES PUBLISHING COMPANY, INC. and William McKinney

v.

Robert N. MICHEL, Sheriff of Erie County, Pennsylvania

v.

Donald SCHICK, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 3, 1993.

Decided Nov. 1, 1993.

400

Craig A. Markham, for appellants/appellees Times Pub. Co., Inc. and William McKinney.

Ted G. Miller, Asst. County Sol., for appellee/appellant Robert N. Michel, Sherrif of Erie County.

Charles L. Holsworth, for appellee/appellant Donald Walter Schick.

Before DOYLE, PALLADINO, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, Judges.

SMITH, Judge.

Times Publishing Company, Inc. and William McKinney (collectively, Appellants) appeal from an order of the Court of Common Pleas of Erie County which granted Appellants limited access to documents under the Act of June 21, 1957,

P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4, commonly referred to as Pennsylvania's "Right-to-Know Act" (Act). McKinney, a reporter for Times Publishing Company, Inc. requested and was refused the right to view and copy written applications which pertain to valid licenses to carry firearms issued by Sheriff Robert N. Michel. Appellants requested only those applications which had been approved and resulted in the issuance of a license. The central issue presented to this Court is to what extent information contained in the applications is subject to public disclosure under the Act.

The trial court held that the address and the telephone and social security numbers of the licensees were not subject to disclosure but that all other information in the applications could be disclosed including the licensees' name, race, reason for requesting the license, personal references, and answers to background questions.[1] The trial court further held that for those licensees whose applications predated its order, only the licensees' names could be disclosed. Appeals were filed by all of the parties to this action which were consolidated for review by this Court.

## I.

This Court's scope of review of the trial court's order is limited to a determination of whether the grant or denial of Appellants' request for information was for just and proper cause. *City of Chester v. Getek,* 132 Pa.Commonwealth Ct. 394, 572 A.2d 1319 (1990). Appellants argue the trial court erred in its determination in that they should be allowed full access to all information contained in the applications and access should not have been restricted to those applications which postdate the trial court's order. Sheriff Michel, on the other hand, argues that disclosure of the applications is precluded by the "investigation" and "personal security" exceptions to the Act. Schick advances the same arguments and in

1. The background questions pertain to the licensees' character and reputation, record of arrests and convictions, mental health history, drug and alcohol abuse history, prior firearms licenses, citizenship, military history, and fugitive status.

addition claims that disclosure of any information in the applications violates constitutional rights to privacy and to bear arms.

■ In order for a document to be subject to disclosure under the Act, it must pass a two-part test. Initially, it must fall within the general statutory definition of a public record set forth in Section 1(2) of the Act, 65 P.S. § 66.1(2), which defines a public record as follows:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons. . . .

At the outset, it should be noted that Sheriff Michel's department, which is responsible for receiving and processing applications to carry firearms, is an "agency" as that term is defined in the Act. *See, e.g., Gutman v. Pennsylvania State Police,* 148 Pa.Commonwealth Ct. 567, 612 A.2d 553 (1992), *appeal denied,* 533 Pa. 638, 621 A.2d 583 (1993).

This Court has held that if a document constitutes an essential component of an agency decision, it falls within the Act's definition of an agency decision and is therefore a public record. *Consumer Education & Protective Ass'n v. Southeastern Pennsylvania Transp. Auth.,* 125 Pa.Commonwealth Ct. 143, 557 A.2d 1123 (1989). The parties stipulated that the information provided on the application forms is critical to the Sheriff's decision to issue licenses. Thus the applications in question are an essential component of an agency's decision and appear to fall within the general definition of "public records" as those terms are used in Section 1(2) of the Act.

■ A determination must then be made as to whether the applications, or any portion of the material contained in the applications, fall within one of the enumerated exceptions to the general definition of public records. *Pastore v. Insurance Department,* 125 Pa.Commonwealth Ct. 611, 558 A.2d 909

(1989). Section 1(2) also defines the exceptions to this definition:

> [T]he term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

Any document falling within one of these exceptions is protected from public disclosure. *Pastore.*

■ Sheriff Michel contends that disclosure of the applications would compromise background investigations by inhibiting applicants' candor and truthfulness, and that the applications should therefore be excepted under the "investigation" category. This Court has previously interpreted the investigation exception to the Act as a vehicle to protect the results of "independent investigations ... which would compromise the performance of an official agency action unrelated to the particular interest which has rendered the requested minute, order or decision a public record in the first place." *Marvel v. Dalrymple,* 38 Pa.Commonwealth Ct. 67, 75–76, 393 A.2d 494, 498 (1978). The parties stipulated that the applicants complete the applications themselves and that the Sheriff undertakes no investigative activity before receiving a completed application. The applications were accumulated for the purpose of providing the Sheriff with information critical to his decision whether to issue a license or to conduct an independent investigation, but they do not reflect the type of indepen-

dent agency investigations protected from disclosure under the Act.

## II.

▆ Sheriff Michel further argues that disclosure of the applications is protected by the personal security exception as well.[2] Personal security has been defined as "freedom from harm, danger, fear or anxiety," *Mergenthaler v. State Employes Retirement Board,* 33 Pa.Commonwealth Ct. 237, 242, 372 A.2d 944, 947 (1977), *confirmed en banc,* 33 Pa.Commonwealth Ct. 237, 381 A.2d 1032 (1978); and in *Moak v. Philadelphia Newspapers, Inc.,* 18 Pa.Commonwealth Ct. 599, 336 A.2d 920 (1975), the Court held that disclosure of information must be "intrinsically harmful" to fall within the personal security exception to the Act.

Under Section 6109 of the Uniform Firearms Act (UFA), 18 Pa.C.S. § 6109, sheriffs are given powers to investigate applicants and to determine their suitability to carry firearms and must use a standard firearms license application form prescribed by the state police for all applicants for license.[3] *Gardner v. Jenkins,* 116 Pa.Commonwealth Ct. 107, 541 A.2d 406, *appeal denied,* 520 Pa. 620, 554 A.2d 511 (1988). While many individuals who work in law enforcement and in the criminal justice system hold licenses to carry firearms, and these persons' identities may be known by virtue of their

**2.** In their briefs, Sheriff Michel and Schick refer to the personal reputation/security exception to the Act; however, the reputation exception to the Act is separate and distinct from the personal security exception to the Act. *See, e.g., Anders v. Department of Treasury,* 137 Pa.Commonwealth Ct. 111, 585 A.2d 568 (1991) (disclosure of unclaimed and uncashed check list would neither prejudice nor impair recipients' reputations); *Marvel* (disclosure of civil service examination grades would prejudice or impair applicants' reputations).

**3.** The Pennsylvania Supreme Court has recognized a compelling societal interest in protecting the public from armed criminals and deterring violent crime and the illegal use of firearms. *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985), *aff'd sub nom., McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). The possession of firearms is heavily regulated in this Commonwealth in order to prevent the carrying of weapons by persons who may be a threat to life and property. *See Gardner.*

public employment, maintaining the confidentiality of their address operates to protect them and their families. *See, e.g., Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491 (1988) (where a fugitive later convicted of murder threatened the prosecutor assigned to his case and when arrested, possessed the address and telephone number of the prosecutor's family).

The trial court noted that if the address of firearms licensees are made public, this information could become available to individuals unable to obtain firearms legally who might burglarize homes in search of firearms. Furthermore, disclosure of the licensees' address would make public the address of for example abuse victims who apply for a gun permit as well as judges, prosecutors, parole and probation officers and others in law enforcement who are licensed to carry firearms and necessarily take precautions to shield information about their address. The possibility that individuals could obtain the address of such individuals poses a threat to their personal security, and given the inherent dangers associated with possession of firearms, disclosure of the licensees' address is "intrinsically harmful" and should therefore be precluded by the personal security exception to the Act.

In the case of disclosure of telephone numbers, the threat to individuals' personal security is in the nature of a threat to their personal privacy. Appellants contend as the trial court observed that because the Act contains no exception based upon the protection of personal privacy, that privacy and confidentiality concerns are irrelevant and cannot be used to protect information from disclosure. However, in *Denoncourt v. Commonwealth State Ethics Commission,* 504 Pa. 191, 470 A.2d 945 (1983), the Supreme Court held that an independent constitutional right of privacy exists in the Pennsylvania Constitution arising under Article I, sections 1 and 8. Although the legislature has not included in the Act a uniform standard governing the disclosure of personal information contained in public documents, it has enacted other piecemeal statutory standards designed to protect personal privacy. These stat-

utes have developed randomly as the legislature has determined that particular types of data should be protected.[4]

In *Commonwealth v. Melilli,* 521 Pa. 405, 555 A.2d 1254 (1989), the Court held that telephone numbers are entitled to the same constitutional protections as telephone conversational content. *See* Wiretapping and Electronic Surveillance Control Act, *as amended,* 18 Pa.C.S. §§ 5701–5781; and *Commonwealth v. Beauford,* 327 Pa.Superior Ct. 253, 475 A.2d 783 (1984), *appeal dismissed,* 508 Pa. 319, 496 A.2d 1143 (1985) (privacy protections extend to the number dialed when making outgoing calls). This Court has also recognized that individuals have a right to privacy in the use of their telephones and telephone numbers.

It is clear ... that the privacy of the telephoning public is the interest which must first arrest one's attention in dealing with this problem. A mere passing acquaintance with the daily newspaper suffices to substantiate the existence of a widely felt and insidious threat to individual privacy posed, not only by technological advances, but also by the evolution of contemporary social structures. A jealous regard for individual privacy is a judicial tradition of distinguished origin, buttressed in many areas by the imperative mandate of constitutional guarantees....

*Barasch v. Public Utility Comm'n,* 133 Pa.Commonwealth Ct. 285, 304, 576 A.2d 79, 89 (1990), *affirmed on other grounds,* 529 Pa. 523, 605 A.2d 1198 (1992), *quoting Commonwealth v. Murray,* 423 Pa. 37, 57, 223 A.2d 102, 112–113 (1966). Based upon these considerations, disclosure of the licensees' home

4. *See, e.g.,* Confidentiality of HIV–Related Information Act, Act of November 29, 1990, P.L. 585, 35 P.S. §§ 7601–7612 (imposes strict controls upon the disclosure of HIV-related information and provides for the imposition of civil liability for violations of that act); Section 7326 of the Crimes Code, 18 Pa.C.S. § 7326 (imposes criminal penalties for the disclosure of confidential tax information); the Criminal History Record Information Act, *as amended,* 18 Pa.C.S. §§ 9101–9183, (sets forth rigid guidelines for the dissemination and use of criminal history records and imposes civil liability for violations of that act); and Sections 8721 through 8725 of the Judicial Code, 42 Pa.C.S. §§ 8721–8725 (govern the disclosure of "confidential information" from criminal proceedings and imposes civil and criminal penalties for violations of that act).

telephone number would violate the right to personal privacy, accorded constitutional protection.

Disclosure of the licensees' social security number raises similar concerns regarding personal security and privacy. In considering these concerns, this Court is cognizant that the use of computers and social security numbers for indexing information allows for the retrieval of extensive amounts of personal data.[5] In *Whalen v. Roe*, 429 U.S. 589, 605, 97 S.Ct. 869, 879, 51 L.Ed.2d 64 (1977), the United States Supreme Court stated:

> We are not unaware of the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files. The collection of taxes, the distribution of welfare and social security benefits, the supervision of public health, the direction of our Armed Forces, and the enforcement of our criminal laws, all require the orderly preservation of great quantities of information, much of which is personal in character and potentially embarrassing or harmful if disclosed. The right to collect and use data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures. (Footnote omitted).

This Court is also guided by a recent decision of the United States Court of Appeals for the Fourth Circuit in *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir.1993). In *Greidinger*, the court held that a Virginia law which required voter registrants to disclose their social security number and made those numbers subject to public disclosure imposed an "intolerable burden" upon the right to vote. The court acknowledged the stringent protections afforded social security numbers in the Privacy Act of 1974, 5 U.S.C. § 552(a) (1977 & Supp.1993), which regulates federal agencies' use of social security num-

---

**5.** For instance, social security numbers have been used to access from the public and private sectors data regarding taxes, motor vehicle registrations, school records, prison files, veteran records, worker's compensation records, low-income housing records, employment records, bank records and credit reports. *See* Simitis, *Reviewing Privacy in an Information Society*, 135 U.Pa.L.Rev. 707 (1987).

bers and makes it unlawful for them to discriminate based upon a refusal to disclose one's social security number.[6] The court further noted that in its report supporting the adoption of this legislation, the Senate Committee stated that the widespread use of social security numbers as universal identifiers in the public and private sectors is "one of the most serious manifestations of privacy concerns in the nation."

The *Greidinger* court also observed that:

> Since the passage of the Privacy Act, an individual's concern over his [social security number's] confidentiality and misuse has become significantly more compelling. For example, armed with one's [social security number], an unscrupulous individual could obtain a person's welfare benefits or Social Security benefits, order new checks at a new address on that person's checking account, obtain credit cards, or even obtain a person's paycheck.... Succinctly stated, the harm that can be inflicted from the disclosure of a [social security number] to an unscrupulous individual is alarming and potentially financially ruinous.

*Id.* at 1353–54 (citations omitted). The possibility of disclosing licensees' social security number indeed raises significant concerns of confidentiality, personal privacy, and personal security.

### III.

Prior decisions of this Court have also recognized the need to protect other confidential information contained in documents sought under the Act. In *Mergenthaler*, an individual seeking lists of the name and address of retired state employees was allowed access to their files only after "confidential data" was purged. After reargument, this Court en banc confirmed the panel's earlier decision. In *Marvel*, the Court

6. *See also* Bruce D. Goldstein, *Confidentiality and Dissemination of Personal Information: An Examination of State Laws Governing Data Protection*, 41 Emory L.J. 1185 (1992) (among states which have adopted uniform standards governing disclosure of confidential information, the highest level of protection has been afforded to descriptive or identifying information such as a name, social security number, home telephone number, or address).

again denied access to confidential information contained in public documents, holding that it was protected by the reputation exception to the Act. In *Marvel*, an individual sought documents pertaining to evaluations and promotions under a police department civil service examination. Citing a "need for confidentiality," the Court held that the applicants' grades, physicians reports, and evaluations were within the general definition of public records in the Act, but that they were protected from disclosure by the reputation exception to the Act. The Court sanctioned the use of an approach which balances the individual's interest in obtaining the requested information against the need for confidentiality.[7]

Earlier decisions of this Court on the other hand have refused to recognize personal privacy considerations when information is sought under the Act. In *Kanzelmeyer v. Eger*, 16 Pa.Commonwealth Ct. 495, 329 A.2d 307 (1974), this Court allowed access to school district employee attendance records sought by a taxpayer, stating that the personal security exception to the Act does not include personal privacy. In *Moak*, this Court rejected the police department's arguments and allowed access to payroll records concluding that documents which are facially benign but contain a potential harm if misused, do not fit within the personal security exception to the Act. Finally, in *Young v. Armstrong School Dist.*, 21 Pa.Commonwealth Ct. 203, 207, 344 A.2d 738, 740 (1975), this Court allowed public disclosure of lists of kindergarten students, stating:

> The concept of personal security, we believe, involves protection from personal harm rather than protection from an

7. In interpreting Exemption 6 of the Freedom of Information Act, 5 U.S.C. § 552(b)(6) (1977), which excludes from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," the federal courts have adopted a test which balances the public interest purpose for disclosure of personal information against the potential invasion of individual privacy. *See Wine Hobby USA, Inc. v. United States Internal Revenue Serv.*, 502 F.2d 133, 135 (3rd Cir.1974) (public disclosure of names and addresses of persons registered to make wine in their home for their own use was barred as a "clearly unwarranted invasion of personal privacy").

invasion of privacy. To hold otherwise would render the Act nugatory. Moreover, we have held that for records to fall within the personal security exception they must be intrinsically harmful and not merely capable of being used for harmful purposes.

■ Although *Mergenthaler* and *Marvel* conflict with *Kanzelmeyer, Moak,* and *Young,* they did not overrule those earlier cases. Rather, they determined that "confidential" information contained in public documents was protected from disclosure without addressing the Court's earlier holdings that privacy is not protected under the Act. Furthermore, the holdings in *Kanzelmeyer, Moak,* and *Young* are at odds with the Pennsylvania Supreme Court's more recent decision in *Denoncourt* and others which have recognized a right to privacy under the constitutions of Pennsylvania and the United States. *See, e.g., Melilli; Beauford.* Therefore, this Court rejects Appellants' argument that under *Kanzelmeyer, Moak,* and *Young,* considerations of personal privacy and the harmful use of facially benign confidential information are never relevant in determining whether information is subject to public disclosure under the Act. Hence, in deciding whether requested information is protected by the personal security exception to the Act, this Court must apply a balancing test, weighing privacy interests and the extent to which they may be invaded, against the public benefit which would result from disclosure. *Marvel.*

■ Accordingly, as public disclosure of the licensees' home address and telephone and social security numbers would constitute an unwarranted invasion of personal privacy outweighing any public benefit derived from disclosure, the information is therefore protected by the personal security exception to the Act. The remaining information in the applications do not implicate the same concerns; consequently, that information is not protected from disclosure under the personal security exception to the Act, and Appellants shall have access to all remaining information in the licensees' applications including their name, race, reason for requesting

the license, personal references and answers to background questions.[8]

## IV.

 Finally, as to those applications which pre-date the trial court's order, no compelling reason exists for restricting disclosure only to those licensees' name. The trial court denied access because applicants did not have prior notice that information contained in their applications would constitute a public record and that retroactive disclosure would represent a "gross miscarriage of justice."

In *Whalen,* the United States Supreme Court held that the right to privacy extends to both "the individual interest in avoiding disclosure of personal matters, and . . . the interest in independence in making certain kinds of important decisions." 429 U.S. at 599, 97 S.Ct. at 876. The trial court determined that applicants should have an opportunity to give an informed consent to disclosure and since existing license holders had no prior notice that information in their applications could be made public, they cannot give consent.

 Although the licensees had no notice that personal information contained in their applications would be subject to public disclosure, they are in no manner deprived of any rights since this Court has held that the licensees' address and telephone and social security numbers are exempt from disclosure under exception to the Act. Correspondingly, the Act does not require prior notice or informed consent before information can be disclosed and in addition, no constitutional

---

8. Before this Court, Schick contends that disclosure of any information contained in the applications would constitute a violation of the licensees' constitutional right to bear arms. Issues not raised in the trial court are waived and cannot be raised for the first time on appeal. *Fatzinger v. City of Allentown,* 140 Pa.Commonwealth Ct. 62, 591 A.2d 369 (1991), *appeal denied,* 529 Pa. 653, 602 A.2d 862 (1992). Schick's counsel did not raise the constitutional issue before the trial court, and stated to the court, "this, as you know, isn't, although there was some implication, anything to do with a right to bear arms or the right to purchase [firearms]. . . ." (N.T., p. 48.) Since Schick did not raise this issue before the trial court, he is precluded from raising it on appeal to this Court.

guarantee exists that one holding a license issued by a governmental agency shall be protected from disclosure of the license or information pertaining to issuance of that license. Thus the trial court's decision prohibiting retroactive disclosure cannot be upheld. The trial court's order is therefore reversed as to its prohibition against retroactive disclosure and affirmed in all other respects.

## ORDER

AND NOW, this 1st day of November, 1993, the order of the Court of Common Pleas of Erie County is reversed to the extent that it prohibited retroactive disclosure of information in those applications to carry a firearm which pre-date the court's order. The court's order is affirmed in all other respects.

McGINLEY, Judge, dissenting.

I respectfully dissent. I do not agree with the majority that the applicants' telephone numbers, social security numbers and addresses fall within the personal security exception to the Act. In *Mergenthaler v. State Employee's Retirement Board,* 33 Pa.Commonwealth Ct. 237, 372 A.2d 944 (1977), we reviewed our previous decisions in *Kanzelmeyer, Moak* and *Young* (cited in majority opinion) and held that the names and addresses of state retirees did not fall within the personal security exception, noting that the records requested cannot be said to place retirees in a state of fear, harm, danger, fear of anxiety, nor are they intrinsically harmful.... *Id.* at 245, 372 A.2d at 947–48. In the present case the addresses, telephone numbers, and social security numbers [1] of applicants are facially benign and do not in and of themselves threaten

1. None of the cases regarding telephone or social security numbers set forth on pages 406–409 of the majority's opinion involve the issue of whether this information comes within the personal security exception to the Right to Know Act. Rather the issue explored in these cases involves the constitutional right to privacy. Here, no constitutional challenge to the Act was properly raised before the trial court. *See* majority opinion at 412, n. 8. I believe the cases relied upon in the majority opinion are inapplicable to the present controversy and the majority is obliquely declaring the Act unconstitutional.

the applicants' personal security or reputation and thus do not fall within the exception. Accordingly, I would reverse the trial court and permit their disclosure.

PALLADINO and PELLEGRINI, JJ., join in this dissent.