TRIBUNE–REVIEW PUBLISHING COMPANY and Eric Heyl

v.

ALLEGHENY COUNTY HOUSING AUTHORITY, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 15, 1995.
Decided July 17, 1995.

---

Vicki L. Beatty, for appellant.

Susan A. Yohe, for appellees.

Before COLINS, P.J., and DOYLE, McGINLEY, SMITH, PELLEGRINI, KELLEY and NEWMAN, JJ.

COLINS, President Judge.

The appellant Allegheny County Housing Authority (ACHA) brings this appeal from a decision in the Court of Common Pleas of Allegheny County ordering appellant to allow appellee Allegheny County Tribune Review (Tribune) access to ACHA payroll records. We reverse the order on the ground that the payroll records of ACHA are not subject to disclosure under 65 P.S. § 66.3.[1]

On June 18, 1993, Eric Heyl, a reporter for the Tribune requested ACHA provide the Tribune with a list of all ACHA employees, their dates of birth, their addresses and their dates of employment. ACHA responded by providing the Tribune with a list of all its employees and their dates of employment. On July 14, 1993, the Tribune formally requested access to the payroll records of ACHA. The payroll records are prepared and maintained by ACHA. The payroll records contain the name, address, telephone number, social security number, salary and employment information of every ACHA employee. ACHA denied the Tribune access to its payroll records but did release to the Tribune a list of all ACHA employees and corresponding salary and employment information.

The Tribune initiated a statutory appeal to the Court of Common Pleas of Allegheny County requesting an order granting it access to the ACHA payroll records. Thereafter, the parties stipulated to ACHA being an agency as defined by the Act. The court of common pleas granted the Tribune's request finding that ACHA payroll records are public records and do not themselves harm reputation or sense of security and therefore must be made public. ACHA took a timely appeal to this Court.

Our review of the issues on appeal is limited to a determination of "whether the grant or denial of appellee's request for information was for just and proper cause." 65 P.S. § 66.4; *Times Publishing Company, Inc. v. Michel,* 159 Pa.Commonwealth Ct. 398, 633 A.2d 1233 (1993), *petition for allowance of appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994).

## I. THE RIGHT TO KNOW ACT

The common law right of a party to inspect public records was codified by our General Assembly in 1957 and is titled the Right to Know Act. The intent of the Act is to assure the availability of government information to citizens of the Commonwealth by permitting access to official information. Under the Act, a broad construction is given to the initial determination of whether a document is a public record "to be tempered as an opposing party brings into play the enumerated exceptions." *Marvel v. Dalrymple,* 38 Pa.Commonwealth Ct. 67, 72, 393 A.2d 494, 497 (1978).

Section 2 of the Right to Know Act, 65 P.S. § 66.2, provides that:

Every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania.

Section 1 of the Right to Know Act, 65 P.S. § 66.1(1), defines an agency as:

any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential government function.

The Act defines "public record", in relevant part, as any account, voucher or contract dealing with the receipt or disbursement of funds. Excluded from the Act's definition of "public record" is any record, document, material, exhibit, pleading, report, memorandum, or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute or order or decree of court, or which would operate to

---

1. "Right to Know Act," Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1—66.4 (Act).

the prejudice or impairment of a person's reputation or personal security.[2]

While the overall emphasis of the Act is on disclosure, it seeks to provide a balanced formula which opens the administrative process to the scrutiny of the general public, and, simultaneously, protects the confidential nature of specific types of information. The question presented herein is whether the Act foresees an individual's right to privacy in certain personal information and, if so, whether the Act demands or excludes the release of that information.

In that vein, ACHA argues that its payroll records are a composite of information, containing, among other things, an employee's name, home address, home telephone number and social security account number. ACHA contends that while on its face the payroll records are a "public record", they are nonetheless an embodiment of an employee's confidential information which may not be disclosed without trampling on the employee's right to privacy and threatening an employee's personal security. Therefore, ACHA reasons, the payroll records are not a "public record" as defined in the Act.[3]

The Tribune argues that the payroll records are a "public record" in which a public employee has no right to privacy. The cornerstone of its argument is the postulate that even if a right to privacy does exist, the countervailing benefits afforded by releasing the information far outweigh a public employee's right to privacy. In support thereof, the Tribune focuses on this Court's decision in *Moak v. Philadelphia Newspapers, Inc.*, 18 Pa.Commonwealth Ct. 599, 336 A.2d 920 (1975).

An examination of *Moak* reveals that the Court was concerned with whether the disclosure of the payroll records of the Philadelphia Police Department would operate to prejudice or impair a police officer's reputation and was therefore excluded by the Act. The Court found that the police department's payroll records contained each employee's full name, class and department, payroll

number, sex, date of birth, annual salary and various other personnel data. The Court found the records themselves did not operate to prejudice or impair reputation and were incapable of such harm. *Id.* at 605, 336 A.2d at 924. Therefore, the *Moak* Court concluded the payroll records therein at issue were "public records" subject to disclosure pursuant to the Act.

Nowhere in *Moak* is there a discussion concerning personal information of the nature presented by this case, *i.e.*, home addresses, home telephone numbers and social security account numbers. Additionally, *Moak* does not address the issue of whether an employee has an expectation of privacy in any of this information. For these reasons we find *Moak* does not control. Instead, we look to *Times Publishing* for guidance.

*Times Publishing* involved firearms applications and whether the application was a "public record" and therefore subject to disclosure; or, whether the application containing confidential information in which the applicant had a right to privacy was subject to the exclusionary provisions of the Act and thus not a "public record". The Court noted that the firearms application contained, among other things, an applicant's home address, home telephone number and social security account number. The Court found an applicant did have an expectation of privacy in this information and held that disclosure of the home addresses, home telephone numbers and social security account numbers of firearms applicants was violative of an applicant's right to privacy. The Court also concluded that disclosure of the information would impair the applicant's personal security. The Court then affirmed the trial court's order granting access to the applications, except for the applicant's home address, home telephone number and social security account number.

The gravamen of the Court's holding rested in concern for protecting the individual's right to privacy not in protecting the individual's right to bear arms. Notably, the factu-

---

2. Section 1(2) of the Act, 65 P.S. § 66.1(2).

3. ACHA also challenges the constitutionality of the Act. This issue was not before the court of common pleas and therefore cannot be addressed on appeal.

al dissimilarity in *Times Publishing* and the case at hand pertains only to the type of document sought. In all other respects *Times Publishing* and the case at hand are consistent.

Moreover, *Times Publishing* and *PG Publishing Company v. County of Washington,* 162 Pa.Commonwealth Ct. 196, 638 A.2d 422 (1994), are grounded in the same analysis. *PG Publishing* involved cellular phone records of public employees and whether the phone bills, prepared by the phone company, could be disclosed under the Act or whether the phone bills fell into one of the enumerated statutory exceptions to the Act. The Court concluded that the phone bills were subject to disclosure because cellular phone records revealed the manner in which the tax dollar was spent. In so holding, the Court specifically stated that "if public money is spent then the Act entitles the public to know where the money goes." *Id.* at 211, 638 A.2d at 429 (*quoting Morning Call, Inc. v. Lower Saucon Township,* 156 Pa.Commonwealth Ct. 397, 627 A.2d 297 (1993)). In our holding today, we are not retreating from that position.

While the Act makes disclosure the general rule, it is restrictive in that it recognizes certain limitations when determining whether a document is a "public record". Unlike the previous cases, we are now challenged to determine whether the payroll records of ACHA are a "public record"; in order to make that determination we must examine whether any statute restricts the release of the specific information contained in the payroll records.

## II. THE PRIVACY ACT OF 1974

■ The right to privacy is one of the most closely guarded treasures of our society. It is characterized as an individual interest in avoiding disclosure of personal matters. *State ex rel. Beacon Journal Publishing Company v. City of Akron,* 70 Ohio St.3d 605, 640 N.E.2d 164 (1994). Its existence in Pennsylvania arises under and is guaranteed by Article 1, § 1 of the Pennsylvania Constitution. *Denoncourt v. Commonwealth State*

*Ethics Commission,* 504 Pa. 191, 197, 470 A.2d 945, 948 (1983). The Tribune herein argues that public employees are not private individuals and they have no recognized right to employment in the public sector. Therefore, it follows, *ipse dicti,* that public employment triggers a near abolishment of the right to privacy. We find no basis in law for this contention.

Our United States Supreme Court has stated that the right to privacy is so broad in its scope that it applies to the most public of our public figures. *Nixon v. Administrator of General Services,* 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977). Moreover, it has been recognized that employees have a privacy interest in their social security numbers. *Oliva v. United States,* 756 F.Supp. 105 (E.D.N.Y.1991). One issue before us is whether the ACHA payroll records, which contain employee social security numbers, are exempted from disclosure because government employees have a right to privacy in their social security account numbers.

We turn to the *Beacon Journal* and *Nixon* cases as the legal backdrop used to analyze first whether employees have a legitimate expectation of privacy in their social security numbers and, assuming so, whether their privacy interests outweigh those interests benefited by disclosure of the numbers. *Times Publishing.*

### A. Privacy Act of 1974

■■ The federal Privacy Act of 1974 [4] is designed to safeguard the right of personal privacy against invasion by agencies which collect and use personal data. 37A Am. Jur.2d § 6; P.L. 93–579 § 2 set out at 5 U.S.C. § 552a note. The Privacy Act contains provisions, which were not codified, but may be found as notes to 5 U.S.C. § 552a. One such section is section 7 of the Privacy Act establishing that it is unlawful for any federal, state, or local government agency to deny any individual any right, benefit, or privilege provided by law because the individual has refused to disclose his social security account number. P.L. 93–579 § 7(a)(1), set out at 5 U.S.C. § 552a note. Any federal,

---

4. Act of December, 31, 1974, P.L. 93–579 § 2,     Title V, § 552a note, 88 Stat.1897.

state, or local government agency that requests any individual to disclose his social security number shall inform the individual whether the disclosure is mandatory or voluntary, by what statutory authority or other authority such number is solicited, and what uses will be made of the social security number. PL 93–579 § 7(a)(1), set out at 5 U.S.C. § 552a note.

The purpose of the Privacy Act of 1974 was to "curtail the expanding use of social security numbers by federal and local agencies and, by so doing, to eliminate the threat to individual privacy and confidentiality of information posed by common numerical identifiers." *Doyle v. Wilson*, 529 F.Supp. 1343, 1348 (D.Del.1982). Additionally, Congress sought "to promote governmental respect for the privacy of citizens by requiring all departments and agencies of the executive branch and their employees, to observe certain constitutional rules in computerization, collection, management, use, and disclosure of personal information about individuals." P.L. 93–579, Senate Report No. 93–1183 at 1974 U.S.C.C.A.N. 6916. Clearly, Congress enacted the Privacy Act with the intent to limit the availability of social security numbers.

Further support for this concept is found in 42 U.S.C. § 405(c)(2)(C)(ii), (viii)(I)[5] which refers to the Privacy Act of 1974 and its admonishment to temper the release of social security numbers. Based on the foregoing, we conclude that the Privacy Act of 1974 limits the availability of social security numbers and creates an expectation of privacy in the minds of all employees concerning the use and disclosure of their social security numbers. *International Brotherhood of Electrical Workers Local Union No. 5 v. United States Department of Housing and Urban Development*, 852 F.2d 87 (3d Cir. 1988) (deciding that release of social security numbers of employees of nonunion contractors hired for government project would constitute clearly unwarranted invasion of privacy, and thus, was barred by the privacy exemption to Freedom of Information Act, 5 U.S.C. § 552(b)(6)).

The Commonwealth's Right to Know Act states that a document shall not be a public record if either access to or publication of the record is prohibited, restricted or forbidden by statute. We find that the Privacy Act of 1974 restricts the use and disclosure of social security numbers.

### B. Balancing Test

Because access to the government and its records is a right to which no citizen should be denied, we must continue our analysis and determine whether the benefits of releasing the information outweigh the individual employee's privacy interest.

In *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir.1993), the issue was raised whether Virginia could require its voters to provide their social security numbers when registering to vote. The voter registration rolls were public records, available to anyone who wanted to purchase the list. Virginia contended that the social security numbers were a vital internal tool used to eliminate voter fraud. The court of appeals disagreed and found that the disclosure of the social security numbers could possibly result in a serious invasion of privacy. The court concluded that the city's reasons for the social security number did not justify disclosure and that other data provided the same information.

### 1. Reason for disclosure

In the case before the Court, the Tribune argues that it must have access to the payroll records in total. While the purpose for the access is not within our scope of review, *Wiley v. Woods*, 393 Pa. 341, 141 A.2d 844 (1958), to fall within the scope of the Act's definition of a public record, the document must constitute an essential component of an agency decision. *Consumer Education & Protective Ass'n v. Southeastern Pennsylvania Transportation Authority*, 125 Pa.Commonwealth Ct. 143, 557 A.2d 1123 (1989). Hence, we are compelled to inquire

---

5. "Social security account numbers and related records that are obtained or maintained by authorized persons pursuant to any provision of law, enacted on or after October 1, 1990, shall be confidential, and no authorized person shall disclose any such social security account number or related record." 42 U.S.C. § 405.

into whether the information is an essential element of the payroll record.

The Tribune contends that it must have more than the names of ACHA employees and their salary and employment information because, without more personal information, it cannot conduct an adequate investigation into the background of ACHA personnel. The Tribune argues that "[t]he public is entitled to know just who these [employees] are[ ]" (Brief of Appellee at 13), but fails to establish that the social security numbers, home addresses and telephone numbers contained on the payroll records are an essential component of that record. Instead, the Tribune impliedly informs this Court that only through obtaining the social security numbers of employees can it access information that is otherwise restricted. It is this very course of conduct the Privacy Act of 1974 seeks to discourage.

A social security number is an identifier. It is a necessary tool of business and government, used to transmit information to both the states and federal government. It is a universal identifier permitting access to information personal and private in nature. If stolen it can create a new identity for the thief. When misused it can destroy a life. In this era of computerization, safeguarding one's private records is a paramount concern and the Tribune's only proffered reason to obtain this window into the personal lives of ACHA employees is to "know just who is performing public functions." (Brief of Appellee at 13).

### 2. Reconciliation of existing case law

The Tribune advances no argument favoring dissemination of information which is otherwise confidential in nature. The Tribune cites no case law controlling on the issue of whether publication of social security numbers is restricted by statute. Instead, the Tribune argues *Mergenthaler v. State Employes' Retirement Board,* 33 Pa.Commonwealth Ct. 237, 372 A.2d 944 (1977), *confirmed en banc,* 33 Pa.Commonwealth Ct. 237, 381 A.2d 1032 (1978); [6] *Young v. Armstrong School District,* 21 Pa.Commonwealth Ct. 203, 344 A.2d 738 (1975); [7] and *Kanzelmeyer v. Eger,* 16 Pa.Commonwealth Ct. 495, 329 A.2d 307 (1974),[8] support the contention that the public has the right to access government information. While we agree with this statement, we find that our holding in this case is not contrary to the above-cited authority.[9]

We do not dispute that the purpose of the Act is to provide public access to the government "books". However, this access may not be at the expense of the individual's right to privacy. The Tribune argues to this Court that by virtue of one's status as a public employee an individual is divested of the right to privacy and again uses a faulty syllogism to support its proposition. We find that an individual has a right to privacy in his/her social security number. We further find that the dissemination of the social security number is restricted by federal law. Thus, we conclude, that because the social security number is restricted by statute, any record containing the social security number of a municipal employee, is excluded from disclosure pursuant to the Right to Know Act.

Remaining is the issue of whether the home address and home telephone number of ACHA employees must be disclosed. A careful review of both federal and state law has revealed no statute restricting the release of government employees' home ad-

---

6. Appellant Merganthaler was granted access to meeting minutes of the State Employees' Retirement Board to obtain the names of retirees and to the files of retirees to obtain their addresses. However, access to the records was permitted only after confidential data was removed at appellant's expense.

7. A list of names and addresses of kindergarten children in the school district is a public record not exempt from disclosure under the personal security exception of the Right to Know Act.

8. The attendance records of the employees of a school district are not exempt from disclosure under the personal security exception of the Right to Know Act when the only information contained in the records is whether there was illness or family deaths.

9. However, we are cognizant of the fact that we are expressly overruling that part of *Young v. Armstrong,* which found no right of privacy existed in the Right to Know Act.

dresses and home telephone numbers. However, in light of our holding that the payroll records of ACHA are not a "public record", and therefore excluded from disclosure, because the records contain employee social security numbers, the specific issue of whether the home address and home telephone numbers must be disclosed is moot.

## III. PERSONAL SECURITY EXCEPTION

ACHA argues that the release of its employees' home addresses, home telephone numbers and social security numbers will result in a threat to the employees' personal security. We must agree, but note that it is the combination of factors that results in the implication of the personal security exception to the Act. This concept of personal security flows from protection against personal harm rather than a potential invasion of harm. *Young*, 21 Pa.Commonwealth Ct. at 207, 344 A.2d at 740. Since the social security number is unique in that it is an identifier permitting an intruder access to confidential information, it is not facially benign. The social security number, combined with other identifying information, places the employee in such a precarious position [10] that this Court is compelled to find that the release of the information is exempted from disclosure pursuant to the Right to Know Act.

We have carefully considered the Act. Within this statutory scheme, which favors disclosure, a limited exception will shield certain records, which would otherwise be public, from public scrutiny. In order to qualify for the exception the agency must overcome the statutory presumption that the records sought are public. We are persuaded by ACHA's contentions that the payroll records are not "public records" because they contain information, the disclosure of which is restricted by statute, and because the disclosure of that information, coupled with other personal information, will jeopardize the personal security of ACHA employees. The

Tribune advances no argument persuading this Court that the failure to disclose the home addresses, home telephone numbers and social security numbers of ACHA employees defeats the mandate of the statute or restricts the public's right of access to otherwise public records. The Tribune has not requested that the payroll records be redacted of the information at issue, and therefore, we are constrained to find that the Tribune shall not be granted access to the payroll records of ACHA.

## CONCLUSION

In Pennsylvania we have recognized an individual's right to privacy but have conceded a well-defined limitation on that right in order not to encroach upon freedom of speech and freedom of the press and the public's right to access government information. In this case we are asked to draw the boundary lines protecting personal information from public disclosure. Undeniably all citizens of this Commonwealth are entitled to know how tax dollars are being spent. Here, the agency properly discloses the names, dates of employment and salary information pertaining to all its employees. ACHA seeks only to limit the Tribune's access to that part of the payroll record containing an employee's home address, home telephone number and social security number. We find that ACHA's denial of access to the payroll record is proper because the record contains the social security numbers of employees and dissemination of social security numbers is restricted by statute. Therefore, under Pennsylvania's Right to Know Act, the payroll record is not a public record and the Tribune is not entitled to access to the payroll record.

Furthermore, The Tribune has not set forth any facts indicating that ACHA's refusal to release the information significantly interferes with the public's right to access the records of the government. We therefore find ACHA had just cause for denying the

---

**10.** "[A]n unscrupulous individual could obtain a person's welfare benefits or social security benefits, order new checks at a new address on that person's checking account, obtain credit cards, or even obtain the person's paycheck." *Griedinger v. Davis*, 988 F.2d 1344, 1353–54 (4th Cir. 1993).

Tribune access to the confidential information of its employees.

Accordingly, the Order of the Court of Common Pleas of Allegheny County is reversed.

### ORDER

AND NOW, this 17th day of July, 1995, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is reversed.

PELLEGRINI, Judge, concurring and dissenting.

I concur with the majority that the Allegheny County Housing Authority (ACHA) need not disclose to the Tribune Review Publishing Company and Eric Heyl, its reporter (Tribune Review), social security numbers of its employees contained in its payroll records. However I dissent to the majority's holding that, just because the document contains social security numbers, the document is not a public record.

In carrying out their activities, governmental units both generate and receive an enormous amount of information. Only information contained in documents defined as a "public record" under the Right to Know Act [1] must be disclosed. A "public record" is any document that is any account, voucher or contract dealing with the receipt or disbursement of funds. Documents that are otherwise public records need not be disclosed if their disclosure is prohibited, restricted or forbidden by statute or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security. Section 1(2) of the Act, 64 P.S. § 66.1(2). An example of information that cannot be disclosed by law is a person's earned income tax returns. Section 13 of the Act of December 31, 1965, P.L 1257, 53 P.S. § 6913.

I agree with the majority that the social security information cannot be disclosed. 42 U.S.C. 405(2)(C)vii(I) provides that "Social Security account numbers and related records that are obtained or maintained by authorized personnel ... shall be confidential, and no authorized person shall disclose any such Social Security number or related record. 'Authorized persons' are defined as federal, state, political subdivision or agency or anyone that has access to Social Security numbers by law." The same penalties relating to disclosure for income tax information set forth in the Internal Revenue Code are made applicable for disclosure of social security numbers. 42 U.S.C. 405(2)(C)vii(II); 26 U.S.C. 7213. Because it would be a crime for employees of the agency to release this information, then the ACHA properly refused to supply this information from its payroll records.

Where I part company with the majority is its holding that the payroll records of ACHA are not public records because they contain social security numbers that are prohibited from being released. Because it is not a public record it then finds that it does not have to release the document at all and therefore the issue of whether home addresses and phone numbers are confidential is, without saying so, moot. In effect, the majority is saying that the public body has no obligation to redact prohibited information and then release the otherwise public record. I disagree for several reasons.

First, the ACHA does not even contend that the payroll record is not a public document because it is tainted by confidential information and cannot be released. While it proposes to compile information and provide it to the Tribune Review, nothing prevents it from redacting the information and giving the Tribune Review the redacted document. Second, that result could be used to shield otherwise public documents. For example, merely adding an individual's social security number to a contract would convert that document to a non-public record. Finally, redaction removes any confidential information from the document that forecloses, which removes the restriction on disclosure, that makes the document again a public document.

As to the substance of whether phone numbers and home addresses fall within the personal security exception, in *PG Publish-*

---

1.  Act of June 21, 1957, P.L. 390, as amended, 65      P.S. §§ 66.1–66.4 (Act).

**686**

*ing Co. v. County of Washington,* 162 Pa.Commonwealth Ct. 196, 638 A.2d 422, (1994), we considered the release of the cellular phone records of private individuals called by public officials. The County contended that the release of phone records invaded those private individuals' privacy, as well as their personal security. In releasing the cellular phone records and quoting from *Young v. Armstrong School District,* 21 Pa.Commonwealth Ct. 203, 207, 344 A.2d 738, 740 (1975), we stated:

> [F]or us to equate a concept of privacy with the concept of 'personal security' would usurp the legislative prerogative of the General Assembly. We must assume that the legislature would have used clear and appropriate language had it intended such a result. The concept of personal security, we believe, involves protection from personal harm rather than protection from an invasion of privacy. To hold otherwise would render the Act nugatory. Moreover, we have held that for records to fall within the personal security exception they must be intrinsically harmful and not merely capable of being used for harmful purposes.

To mandate the release of documents containing phone numbers of private individuals called by public officials in that case, yet here foreclose the release of the public employee's phone number, is the equivalent of saying that the right to security of private citizens is less than that of public employees. As to releasing the home addresses, we addressed that issue in *Mergenthaler v. State Employee's Retirement Board,* 33 Pa.Commonwealth Ct. 237, 372 A.2d 944 (1977). In that case, we held that the names and addresses of state retirees did not fall within the personal security exception, noting that the records requested cannot be said to place retirees in a state of fear, harm, danger, fear of anxiety, nor are they intrinsically harmful. *Id.* at 245, 372 A.2d at 947–48.

If the release of telephone records of private citizens and the addresses of all state retirees are not intrinsically harmful to those individuals, how can release of addresses and phone numbers of active public employees be intrinsically harmful or threaten their per-

sonal security or reputation? Accordingly, to that portion of the opinion, not releasing addresses and home phone numbers, I respectfully dissent.

DOYLE and MCGINLEY, JJ., join in this concurring and dissenting opinion.