James **PARSONS**, Reporter for WTAE–TV

v.

**URBAN REDEVELOPMENT AUTHORITY OF PITTS-BURGH, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2005.

Decided Feb. 15, 2006.

Ira Weiss, Pittsburgh, for appellant.

Justin Peacock, New York City, for appellee.

BEFORE: SMITH–RIBNER, Judge, COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Urban Redevelopment Authority of Pittsburgh (URA) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that sustained the appeal of James Parsons (Parsons), a reporter for WTAE–TV, from the URA's final determination denying some aspects of a request for information regarding repayment of URA loans. The question involved is whether the trial court erred in concluding that the public's interest in disclosure of private loan histories of individuals or businesses who obtain loans from the URA outweighs any privacy rights that a business has or any reputational harm that it might suffer.

On August 5, 2004, Parsons submitted a written request to the URA pursuant the Act commonly referred to as Pennsylvania's "Right–to–Know Act," Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.9 (Act). The request asked for access to documents concerning the Pittsburgh Business Growth Fund, the Urban Development Fund and the Streetface Program (Funds) for calendar years 2002, 2003 and 2004 to date that included: (a) names and locations of all businesses or entities that received loans from those Funds; (b) all loan applications for those businesses that received loans; (c) the amount of money loaned to each and the conditions of each loan and the terms of repayment; and (d) the payment history of each loan recipient. On September 4, 2004, the URA granted access to many of the documents but denied access to payment history for loan recipients, stating that such documents are not public records because the borrowers' right to privacy would be infringed, and disclosure might operate to the prejudice or impairment of their reputations. On October 15, 2004, the Assistant General Counsel provided a final determination responding to Parsons' arguments.

On February 4, 2005, the court reversed the URA determination and ordered it to make the payment history of each recipient of a loan from 2002 to the present available to Parsons. The court quoted

from Section 2 of the Act, 65 P.S. § 66.2, before its amendment by Section 2 of the Act of June 29, 2002, P.L. 663, regarding the basic right of examination and inspection: "Every public record of an agency shall, at all reasonable times, be available for examination and inspection by any citizen of the Commonwealth of Pennsylvania."[1] It also quoted the definition of "public record" in Section 1, 65 P.S. § 66.1:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency ... Provided, That the term "public records" ... shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which ... would operate to the prejudice or impairment of a person's reputation or personal security....

The trial court stated that this Court has interpreted the personal security and personal reputation exceptions as creating a privacy exception to the Act's general rule of disclosure, citing *Cypress Media, Inc. v. Hazleton Area School Dist.*, 708 A.2d 866 (Pa.Cmwlth.1998) (holding that applications for teaching positions that contained much confidential information protected by law need not be disclosed). The court referred to *Times Publishing Co., Inc. v. Michel*, 159 Pa.Cmwlth. 398, 411, 633 A.2d 1233, 1239 (1993): "[C]onsiderations of personal privacy ... are ... relevant in determining whether information is subject to public disclosure under the Act." Quoting *Tribune–Review Publishing Co. v. Westmoreland County Housing Authority*, 574 Pa. 661, 833 A.2d 112 (2003), the court stated that the intent of the Act is to ensure access to official information; the requester must establish that the requested material is a public record, and if he or she is successful the agency must prove that the record should not be disclosed.

The URA conceded that the requested records were public records on their face but argued that direct harm to the reputation and livelihood of a small business from being publicly labeled as "delinquent" outweighed any benefit of disclosing its identity and payment history. Parsons argued, as a threshold matter, that the exception for impairment of reputation does not apply to businesses. The trial court stated that the Act does not define "person," but it quoted the definition in Section 1991 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1991, which provides that "unless the context clearly indicates otherwise," the term "[i]ncludes a corporation, partnership, limited liability company, ... government entity (other than the Commonwealth), estate, trust, foundation or natural person." It therefore concluded that the context and case interpretations indicated that the personal security exception applies only to natural persons but that the reputation exception is not so limited. In *Times Publishing Co.* the Court recognized that the reputation and personal security exceptions related to a right of privacy protected by Article I, Sections 1 and 8 of the Pennsylvania Constitution.

The trial court rejected Parsons' argument that the URA's response was insufficient, and it determined that the URA clearly was arguing that direct harm to reputations would result. The court noted, however, that under *Times Publishing Co.* a finding of reputational harm does not automatically result in exemption. Rath-

---

1. Section 2(a) of the Act, 65 P.S. § 66.2(a), now provides: "General rule. Unless otherwise provided by law, a public record shall be accessible for inspection and duplication by a requester in accordance with this act.... Public records shall be available for access during the regular business hours of an agency."

er, such a finding triggers the need for a balancing of competing interests. On this final point, the court stated that the public has a strong interest in knowing to whom public funds are being loaned and whether they are being repaid so that the wisdom of the disbursements may be evaluated and public officials may be held accountable. Public knowledge protects against malfeasance, misfeasance or waste. The court concluded that the public's interest overweighs any privacy rights that a business has in the information requested or any reputational harm.[2]

The URA maintains that the trial court erred in determining that the public's interest in disclosure of private loan histories of individuals or businesses outweighs any right to privacy or any reputational harm that a business would suffer from such disclosure. The URA cites *Tribune–Review Publishing Co. v. Allegheny County Housing Authority*, 662 A.2d 677 (Pa. Cmwlth.1995), where the Court reversed a grant of access to housing authority payroll records, for the proposition that the Court has interpreted the personal security and personal reputation exceptions as creating a privacy exception. Although acknowledging that the definition of public record has been interpreted liberally, the URA asserts that Parsons' request goes beyond the liberal definition and serves no purpose other than to identify borrowers that may be struggling financially.

The URA contends that loan applications contain much information that is not within the meaning of public record under the personal security exception, including home addresses, telephone numbers, Social Security numbers, bank account numbers and other confidential information, citing *Cypress Media* in support. In *Times Publishing Co.* the Court held that disclosure of home addresses, telephone numbers and Social Security numbers contained in applications for licenses to carry firearms would constitute an unwarranted invasion of personal privacy, outweighing any public benefits. In *Cypress Media*, even though the qualifications of public school teachers were involved, the Court held that the privacy interests outweighed the public benefits. The URA agrees that the public has an interest in knowing whether loans are being repaid but asserts that it is not necessary to identify specific borrowers and to publish their private information. Payment histories could be disclosed without identifying individual borrowers.

Parsons first renews his contention that the exception for "any record ... which would operate to the prejudice or impairment of a person's reputation or personal security" in Section 1, as well as the privacy exception acknowledged in *Times Publishing Co.*, does not apply to commercial information of businesses. Agreeing with the trial court that the personal security exception applies only to natural persons, Parsons argues that the court's interpretation gives two different meanings in the same sentence to the term "person." He submits that the privacy exception recog-

---

**2.** In the 2002 amendments to the Act, the legislature removed the former statement of the nature of review by a court in Section 4, 65 P.S. § 66.4. The legislature also added Section 9, 65 P.S. § 66.9, which states that the provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to this act. Nevertheless, this Court has conducted its appellate review for whether constitutional rights have been violated, whether an error of law has been committed and whether the necessary findings of fact are supported by substantial evidence in the record by analogy to Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, and Section 754 of the Local Agency Law, 2 Pa.C.S. § 754. *See, e.g., Muir v. Alexander*, 858 A.2d 653 (Pa.Cmwlth.2004); *Martella v. Department of Transportation*, 841 A.2d 633 (Pa. Cmwlth.2004).

nized in *Times Publishing Co.* was derived from the personal security exception and that it also should be limited to natural persons. Parsons maintains that there is a general principle that businesses do not possess a right to privacy, citing federal or common pleas court cases not binding here.

If the privacy exception is available, Parsons contends that the URA has not met its burden to show that disclosure would harm a business' reputation and notes that cases have rejected overly speculative claims of harm to reputation.[3] Parsons further contends that the URA's rationale does not support withholding of payment histories of all borrowers when only some are delinquent (and have not been named publicly already through lawsuits) and those that are not will suffer no harm to reputation by disclosure. As part of its response to the request, the URA stated that of ninety-two loans made since 2000 through the Pittsburgh Growth Fund and the Urban Development Fund programs, twenty-two were more than six months delinquent. It declined to identify borrowers against whom it has filed suit.

Parsons' second overall argument is that if a balancing was necessary, then the trial court correctly performed it. If exceptions for privacy or personal reputation apply, then courts must balance these interests against the public interest in disclosure. *Sapp Roofing Co., Inc. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 12,* 552 Pa. 105, 713 A.2d 627 (1998). Parsons notes that the URA has disbursed over $13 million in public funds through the programs in recent years.

Further, Parsons states that the issue of the disclosure of personal information about borrowers is not before this Court. The URA stated in its initial response that it would redact personal information such as home addresses, telephone numbers, Social Security numbers and bank account numbers. Appeal of James Parsons to Court of Common Pleas, Ex. 2; Reproduced Record 10a. Parsons has not challenged such redactions. Brief of Appellee, p. 17 n.3. Nor, he contends, is the issue before the Court of whether individuals as opposed to businesses have a right to privacy or reputation in their loan histories sufficient to overcome the public's right to know. As to whether disclosure would be damaging because the request was by a reporter and presumably for purposes of media publication, Parsons states that motive or intent of one making a request under the Act is irrelevant and may not be considered, citing *Envirotest Partners v. Department of Transportation,* 664 A.2d 208 (Pa.Cmwlth.1995).

Parsons points out that in *Cypress Media* the Court first concluded that the applications for teaching positions were not public records because they did not form an essential component of the agency decision. The Court found only a minimal interest in disclosure weighed against the strong interest in maintaining privacy of confidential information. In *Goppelt v. City of Philadelphia Revenue Department,* 841 A.2d 599 (Pa.Cmwlth.2004), involving a request for mailing addresses of delinquent real estate taxpayers, the Court determined that the privacy and security

---

3. *See, e.g., Travaglia v. Department of Corrections,* 699 A.2d 1317 (Pa.Cmwlth.1997) (holding that claim that disclosure of identities of voluntary witnesses to executions might subject them to denunciation by opponents of capital punishment and affect their standing in the community was too speculative); *Pa-*

*tients of Philadelphia State Hospital v. Department of Public Welfare,* 53 Pa.Cmwlth. 126, 417 A.2d 805 (1980) (holding that report by accrediting organization evaluating state hospital did not refer to specific individuals and was not intrinsically harmful to the persons or reputations of hospital staff).

concerns raised in regard to the redacted addresses were highly speculative and would apply only to some owners. In *Envirotest Partners*, 664 A.2d at 214, the Court reasoned that the purpose of the Act is to scrutinize acts of public officials "not to protect the business secrets of private companies who voluntarily enter into contracts containing such 'secrets' with a public agency...."

■ The Court accepts in part the analytical approach taken by the trial court. It properly rejected Parsons' contention that the concept of privacy and of impairment of reputation under the Act can never apply to businesses. Under 1 Pa.C.S. § 1991, the concept of "person" in the phrase "a person's reputation" in the definition of public record in Section 1 of the Act is not clearly limited by the context to natural persons, and therefore the broader definition under Section 1991 applies, which includes a corporation. Businesses certainly may and do have reputations that are valuable to them and that may suffer injury due to disclosure. In addition, the court was correct that legitimate issues of privacy and of reputation have been raised on behalf of borrowers in this case. Disclosure that a business was delinquent on repayment of a URA loan certainly would be injurious to a business' reputation, and such a claim is not speculative. Moreover, the fact that not every business entity with a loan under the URA Funds is delinquent does not mean that repayment histories in general must be disclosed. A tracking of such information would disclose which borrowers ultimately became delinquent. For that reason the Court must balance the privacy and reputational interests asserted against the public benefit. *Sapp; Times Publishing Co.*

■ The programs at issue here involve the loaning of millions of dollars in public funds for urban redevelopment projects that are intended to produce a public benefit. As the trial court reasoned, the public has a very strong interest in knowing to whom such public funds are being loaned and in what manner the loans are being repaid. Public disclosure and oversight will provide protection against malfeasance, misfeasance and the waste of public funds. Borrowers of public funds must expect public oversight, as contrasted with borrowers from private sources, and the benefits of such oversight outweigh their privacy interests.

Having concluded that the requested loan repayment histories must be disclosed, the Court emphasizes the matters that are not subject to disclosure. The records involved here, particularly the loan applications, necessarily contain a great deal of information that is personal and confidential as to individuals involved in the businesses. The Court held in *Times Publishing Co.* that disclosure of home addresses, home telephone numbers and Social Security numbers of applicants for licenses to carry firearms would work an invasion of privacy interests that would outweigh any public benefit, and the same holding applies here. In *Cypress Media* the Court identified other types of confidential information that is protected from disclosure under the Act, including college transcripts, medical reports and child abuse clearances. In *Tribune–Review Publishing Co. v. Bodack*, 875 A.2d 402 (Pa.Cmwlth.2005), the Court concluded that persons who placed calls to city council members' city-supplied cellular phones and who received calls placed from those phones had a legitimate expectation of privacy in their own telephone numbers (which would be revealed on a cellular telephone bill) as well as a personal security interest in this era when identity theft is a national concern. Although those types of information likely are not involved

here, they illustrate the kind of confidential information that is subject to protection.

The URA indicated originally that it would redact bank account numbers as well as home address and telephone numbers and Social Security numbers. Parsons does not challenge this redaction, and the Court specifically endorses it. Parsons may have access to records including the repayment histories of businesses that have borrowed public funds through the URA-administered programs but may not have access to necessarily confidential information relating to individuals. The Court therefore affirms the order of the trial court.

█ As a final matter, Parsons advances a claim pursuant to Section 4.1(a) of the Act, added by Section 6 of the Act of June 29, 2002, 65 P.S. § 66.4–1(a).[4] The section provides that if a court reverses an agency's final determination the court may award reasonable attorney's fees and costs of litigation, or an appropriate portion thereof, to a requester if the court finds either:

(1) the agency willfully or with wanton disregard deprived the requester of access to a public record subject to access under the provisions of this act; or

(2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

The URA maintains that the trial court acknowledged the validity of the URA's argument at least to the extent of stating that some damage to business reputations would result from disclosure and that the court found it necessary to conduct a balancing of interests to resolve the question, which indicates that the URA did not act willfully or wantonly or base its defense on an unreasonable interpretation of law. The Court need not address the procedural issues raised, *see* n.4, because it agrees that the URA did not willfully or wantonly deny access and that its position was not based on an unreasonable interpretation of law as indicated by the foregoing discussion. Therefore, Parsons' request for a remand is denied.

*ORDER*

AND NOW, this 15th day of February, 2006, the order of the Court of Common Pleas of Allegheny County is affirmed. The request by James Parsons for a remand to the trial court to award reasonable attorney's fees and costs of litigation against the Urban Redevelopment Authority is denied.

---

4. Parsons notes that he submitted a request for attorney's fees to the trial court on March 1, 2005, accompanied by a memorandum of law, which was not docketed or ruled upon by the trial court, and he requests that this court remand for a ruling by the trial court. In its reply brief, the URA argues that Parsons' submission of a Supplemental Reproduced Record, containing his March 1 submission, is in violation of Pa. R.A.P. 2152, which does not provide for inclusion in the reproduced record of any matters not included in the record. The Court agrees as the Supplemental Reproduced Record is not a reproduction of anything contained in the record.