**Michael J. TRAVAGLIA, Petitioner**

v.

**DEPARTMENT OF CORRECTIONS,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 10, 1997.

Decided July 29, 1997.

Mark J. Lesko, Pittsburgh, for petitioner.

Sarah B. Vandenbraak, Chief Counsel, Camp Hill, for respondent.

Before SMITH and PELLEGRINI, JJ., and JIULIANTE, Senior Judge.

SMITH, Judge.

Michael J. Travaglia petitions for review of the Department of Corrections' (DOC) denial of requests for access to documents pertaining to the Commonwealth's lethal injection method of execution in general and to the application of these procedures to Keith Zettlemoyer and Leon Moser in particular. Travaglia questions whether DOC's denial of permission to examine, inspect and copy such documents violated his rights under Sections 2 and 3 of the Act commonly known as the Right–to–Know Act, Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.2 and 66.3.

The legislature adopted lethal injection as the means of administering the death penalty in Pennsylvania by the Act of November 29, 1990, P.L. 572, 61 P.S. § 2121.1. That Act specifies the injection of a lethal quantity of an ultrashort-acting barbiturate in combination with a paralytic agent. In May 1995, Zettlemoyer became the first person executed by lethal injection; in August 1995, Moser became the second person executed by this means. Travaglia is incarcerated under a sentence of death. In July and August 1995, Mark J. Lesko, attorney for Travaglia in a proceeding in federal court, made written requests to DOC under the Right–to–Know Act to inspect and copy records relating to the lethal injection death penalty.[1]

In a letter dated August 1, 1996, the Chief Counsel of DOC denied possession of photographs or of documents relating to the process for determining dosages, reports of the testing of substances used, postmortem medical evaluations of Zettlemoyer and Moser and the methods considered and the process used by DOC in adopting lethal injection. The letter further denied access to all of the other specified documents, asserting that they did not constitute public documents or that, if they did, they were documents that would impair the personal security or reputation of individuals or that were otherwise privileged. In addition, the letter asserted that the request was an attempt to secure information that would not otherwise be subject to discovery in the ongoing litigation between Attorney Lesko's client and the Commissioner of DOC.[2]

## I

■ The Court must first address DOC's contention that Travaglia lacks standing to

---

1. Specifically, counsel requested permission to inspect records relating to: the identity of each chemical or substance used in the lethal injection process; the relative amounts of such substances; the relative dosage; the process by which the Commonwealth determines the dosage; the duration of time that the subject is exposed to each substance; the sequence of administration; any reports of the testing of the individual or combined chemicals; any reports or testing used by DOC in choosing the chemicals and/or substances used; any manual, protocol or written document specifying the technique and manner of both executions; all postmortem medical evaluations of Zettlemoyer and Moser; any study, report or written document reflecting the methods considered and the process followed by DOC when it adopted lethal injection as its method of execution; and all photographs taken in conjunction with the Zettlemoyer and Moser executions, including postmortem photographs.

Counsel also requested the names of witnesses to the Zettlemoyer and Moser executions; the procedure for selecting witnesses for executions generally and for the Zettlemoyer and Moser executions in particular; and all public records reflecting the observations, reflections or opinions of the witnesses to both executions.

These records fall into two overall categories. They are the lethal injection procedures and information relating to witnesses of such executions and their selection, both past and future.

2. Pursuant to Section 4 of the Right–to–Know Act, 65 P.S. § 66.4, this Court reviews a denial of a request for information to determine whether such denial was for just and proper cause under the terms of the Right–to–Know Act. *Owens v. Horn*, 684 A.2d 208 (Pa.Cmwlth.1996).

bring this appeal. DOC refers to Pa. R.A.P. 501, which provides that an appellant must be both aggrieved and a party to the action below. DOC asserts that it never denied any request from Travaglia; therefore he is not aggrieved and was not a party below, and the appeal should be quashed. In *Statewide Bldg. Maintenance, Inc. v. Pennsylvania Convention Center Authority*, 160 Pa. Cmwlth. 544, 635 A.2d 691 (1993), the Court refused to permit counsel simply to substitute on appeal as the requesting party, where a petition in equity alleged that the corporation bringing the action was a citizen of another state. DOC argues that the same rule against substitution applies here.

■ In a reply brief, Travaglia asserts that the context of several telephone calls at the time of the requests established that they were made by Attorney Lesko's law firm on behalf of Travaglia as their client. The Court, however, may not consider such factual averments outside of the record before it. Travaglia also argues that DOC's reference in its letter of response to alleged efforts by Attorney Lesko to obtain information not otherwise subject to discovery in Travaglia's action against the Commissioner indicates that DOC was aware that the requests for information were made on Travaglia's behalf. With this the Court agrees. DOC's reference in its response to possible discovery requests in another case would be a complete non sequitur unless DOC recognized that the request was being made on behalf of Travaglia. The Court rejects DOC's request to quash this appeal for lack of standing.

## II

Travaglia first emphasizes that the purpose of all statutory interpretation is to ascertain and give effect to the intent of the legislature. *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 664 A.2d 84 (1995). He notes that this Court has held that the intent of the Right–to–Know Act is to assure availability of governmental information by permitting access; a broad construction is given

to the initial determination of whether a document is a public record under Section 1(2), which is to be tempered as an opposing party brings into play the enumerated exceptions. *Tribune–Review Publishing Co. v. Allegheny County Housing Authority*, 662 A.2d 677 (Pa.Cmwlth.1995), *appeal denied*, 546 Pa. 688, 686 A.2d 1315 (1996).

Section 1(2) of the Right–to–Know Act, 65 P.S. § 66.1(2), defines "Public Record" in part as follows:

> [A]ny minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term 'public records' ... shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security....

The definition of "minute, order or decision" in Section 1(2) has been broadly construed to require only some form of action by an agency that has an effect on someone. *Owens v. Horn*, 684 A.2d 208 (Pa.Cmwlth.1996) (DOC Code of Ethics, which embodies decisions of DOC that fix duties and obligations of its personnel, is a public record).

■ Travaglia contends that the requested materials affect the rights, duties and obligations of DOC personnel charged with the duty of carrying out executions, of witnesses required to be present and of condemned persons. He states a concern that DOC's adoption of unspecified and unexplained lethal injection procedures could result in cruel and unusual punishment. The Court agrees with Travaglia's implicit position that underlying any death penalty statute is the requirement of Article I, Section 13 of the Pennsylvania Constitution that "cruel punishments [shall not be] inflicted." Although DOC speaks only of rights and duties of its personnel and of witnesses, the last right

that a condemned person retains is that of being executed in a manner that is not unconstitutional, which currently is embodied in 61 P.S. § 2121.1.

■ DOC has acknowledged that it has a manual, which it regards as confidential, that describes in detail the actual procedures for lethal injection and also the attendant security measures. Details of the procedures by which DOC implements lethal injection necessarily affect the statutory and constitutional rights of the condemned. In *Lamolinara v. Barger,* 30 Pa.Cmwlth. 307, 373 A.2d 788, 790 (1977), the Court held that the term "fixing" rights, duties and so forth was intended to mean "affect[ing] them." Because most of the information Travaglia requests concerning implementation of executions affects constitutional and statutory rights, the Right–to–Know Act defines it to be a "public record" that any citizen has a right to inspect, unless some statutory exception applies.[3]

■ DOC asserts that documents relating to the technique and manner of the lethal injection procedures are not within the general definition of public records because they set guidelines and goals, not obligations for its personnel. By their nature they must afford flexibility to accommodate the characteristics of individual inmates and also any last-minute decisions by courts, the Governor or the inmates' attorneys. DOC contends that the documents requested fix no obligations or duties of personnel and do not carry any penalties for deviation from the documents' suggestions. The Court, however, rejects the notion that an agency may avoid disclosure of materials relating to performance of its mandatory duties by characterizing them as "suggestions" or "goals" that do not "fix" any rights or duties of its personnel.

■ The second overall category of information that Travaglia seeks concerns witnesses to lethal injection executions, both the method of selecting them and the identity and any recorded impressions of those in the past. DOC asserts that no person has a right to be a witness; hence the method of selection affects no right. Further, recorded observations of past witnesses cannot affect any present or future rights. The Court does not agree. At a minimum, in terms of the rights of condemned persons and of society as a whole, the presence of witnesses and any recorded observations they provide serve as a check that the procedure was performed properly.

Section 9711(*l* ) of the Sentencing Code, 42 Pa.C.S. § 9711(*l*), provides that no person shall witness an execution except for (1) the superintendent of the institution involved, (2) a qualified physician, (3) six reputable adult citizens selected by the superintendent, (4) a spiritual advisor if requested, (5) up to six accredited representatives of the news media and (6) such prison staff as the superintendent selects. Putting a person to death is as solemn an act as the State is capable of performing. Where the State has made provision for witnesses to an execution, their presence must be presumed to serve a most serious purpose. Accordingly, the Court concludes that the information requested as to witnesses and the manner of their selection is within the general meaning of public records, although DOC may be able to show that an enumerated exception applies.

---

**3.** Travaglia also argues that courts in other jurisdictions have held that information relating to implementation of the death penalty must be disclosed. In *Hoffman v. Illinois Department of Corrections,* 158 Ill.App.3d 473, 110 Ill.Dec. 582, 511 N.E.2d 759 (1987), the court noted the public controversy and judicial debate over the constitutionality of the death penalty and the potential for the exact procedures implementing it to be challenged as cruel and unusual. The court held that information as to those procedures was precisely the type of information required to be disclosed under that state's freedom of information act to enable the people to perform their duty of discussing public issues fully and freely and of monitoring government to ensure that it is being conducted in the public interest. *Id.* at 475 n.1, 110 Ill.Dec. at 583 n.1, 511 N.E.2d at 760 n.1. DOC correctly responds that the Illinois statute is much broader than the Pennsylvania Right–to–Know Act. The Illinois statute allows full and complete disclosure of all information regarding the affairs of government.

## III

As respondent in this proceeding, DOC for the first time provides its reasons for the application of exceptions. Citing *Tribune–Review Publishing Co.*, DOC asserts that public access to the lethal injection procedures threatens the personal security of staff and possibly the public in general. In *Tribune–Review Publishing Co.* the Court's affirmance of the denial of access to social security numbers and personal information of county housing authority employees turned primarily upon a determination that disclosure of social security numbers is prohibited by privacy rights embodied in statutes, but the Court held that the personal security exception under Section 1(2) of the Right–to–Know Act applied as well. The Court fully recognizes that it is the nature of personal security exception discussions in Right–to–Know Act appeals that some speculation must be entertained, such as the discussion in *Tribune–Review Publishing Co.*, related to the many possible adverse consequences from the release of certain categories of public records.

Personal security has been defined as " 'freedom from harm, danger, fear or anxiety.' " *Times Publishing Co. v. Michel,* 159 Pa.Cmwlth. 398, 405, 633 A.2d 1233, 1236 (1993), *appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994) (quoting *Mergenthaler v. State Employes' Retirement Board,* 33 Pa.Cmwlth. 237, 242, 372 A.2d 944, 947 (1977), *confirmed en banc,* 33 Pa.Cmwlth. 237, 381 A.2d 1032 (1978)). In *Times Publishing Co.* the Court noted that privacy and confidentiality concerns sometimes do play a role in evaluating particular requests for information, even for facially benign materials, and held that all information submitted on an application to a sheriff for a license to carry firearms is subject to disclosure except for the home address and telephone and social security numbers of the applicant.

### a.

 DOC avers that its lethal injection manual includes both the actual method of lethal injection and details of the security measures involved. Providing condemned inmates with security information could allow them to spend years plotting means of escape, endangering both DOC personnel and the public. Providing specifics regarding the substances involved could easily result in widespread dissemination of this dangerous information. DOC also argues that with knowledge of the precise substances and their method of administration, a condemned person might devise methods of preventing the drugs from having their intended effect. The Court is persuaded that some of the concerns expressed by DOC have merit in the present case.[4]

The Court notes that in 61 P.S. § 2121.1 the legislature provided for the general type of drugs to be used, but it left to DOC's discretion the choice of the specific substances. In the absence of any allegation or basis for an inference that DOC has abused that discretion, the Court believes that the public health danger from dissemination of detailed information regarding specific lethal drugs outweighs the benefits to be derived from such release. The Court also sees merit in the contention that a condemned inmate could attempt to foil an execution if the inmate were in possession of overly specific information.

The presence of a physician and of witnesses to report on executions helps to assure that the procedures and methods used do not violate the legislature's obvious intent to adopt a method of execution more humane than that which preceded it. Thus the Court concludes that information relating to the precise substances and dosages in the lethal injection is protected from disclosure. This exception encompasses documents relating to the process for determining dosages, reports of testing of the substances used, postmortem medical examinations and the methods considered and process used by DOC in adopting lethal injection.

---

The Court shall decide this matter under Pennsylvania law.

**4.** The Court observes that Travaglia has not requested information relating to security measures involved in an execution; therefore, DOC's arguments on that point are not relevant. *Times Publishing Co.* and other cases have held that access may be provided to records that are redacted to prevent disclosure of protected information.

■ This leaves only photographs from the two lethal injection executions that have taken place. DOC denies possessing these photographs, which Travaglia asserts DOC must have. Unlike decisions by DOC choosing particular drugs and procedures for executions, the mere taking of photographs does not appear to the Court to constitute an action by a government agency affecting rights, privileges, immunities, duties or obligations. Therefore, the Court concludes that the requested photographs are not within the general definition of public records under the Right–to–Know Act. The photographs Travaglia requested are not subject to disclosure by DOC, even if they were in its possession.

### b.

■ As for the names of witnesses, DOC asserts that persons militantly opposed to the death penalty may intimidate, threaten or attack witnesses in an effort to punish current ones or to intimidate future ones. Except for the superintendent and such staff as he or she selects, it appears that no individual is required to be a witness at an execution under Section 9711(*l*) of the Sentencing Code. DOC does not assert that it is able to offer proof of a threat to witnesses from the specter of violent death-penalty opponents.[5] Because of the important role that witnesses play, noted above, and the fact that they are competent adults who participate by their own choice, the Court concludes that the identity of both future and past witnesses falls outside the personal security exception. Absent proof of some guarantee of confidentiality given when past witnesses chose to participate, the Court sees no reason to withhold their names.

■ DOC also argues that the personal reputation exception applies. It asserts that public and private individuals who witness an execution should be protected from denunciation, ridicule and opprobrium from opponents of capital punishment, which would harm their standing in the community. DOC again seeks to apply an exception solely on the basis of unsupported speculation. It is presumed that witnesses to executions are aware of the controversial nature of capital punishment. The exception for injury to reputation is not so broad as to justify nondisclosure of otherwise public records simply because an agency asserts that their release could, speculatively, impair the reputations of a particular class of individuals. *See Patients of Philadelphia State Hospital v. Department of Public Welfare*, 53 Pa.Cmwlth. 126, 417 A.2d 805 (1980); *Moak v. Philadelphia Newspapers, Inc.*, 18 Pa.Cmwlth. 599, 336 A.2d 920 (1975). Accordingly, the Court concludes that DOC denied access to information relating to the manner of selection of witnesses and to their identity and any recorded impressions of those in the past without just and proper cause under terms of the Right–to–Know Act.

### IV

Travaglia challenges as not credible DOC's assertion that it does not have documents in the five categories noted in its letter of August 1, 1996; he contends that documents must exist reflecting, for example, the method by which dosages are determined. DOC notes that an agency is not required to create a document that does not already exist, citing *Friedman v. Fumo*, 9 Pa.Cmwlth. 609, 309 A.2d 75 (1973), where an agency was required to permit inspection of public records but was not required to prepare and furnish lists or other extracts of its records. DOC refers to the duty of its counsel to be truthful in their responses and maintains that it is not sufficient for a person simply to allege that documents must exist.

The superintendent of the prison where an execution is performed is required by Section 9711(m) and (n) of the Sentencing Code, 42

---

**5.** Although they are not a part of the record, DOC refers in its brief to recent newspaper articles recounting prison escapes as examples of the adverse safety implications that may arise when prisoners gain access to confidential corrections procedures. DOC's speculation concerning the behavior of opponents of capital punishment is wholly unsupported. DOC offers no comparable citation or reference related to the conduct of death-penalty opponents.

Pa.C.S. § 9711(m) and (n), to submit a certification to the court of the county where the inmate was sentenced that the inmate was duly executed, with an attached written post-mortem report by the attending physician. DOC is representing, therefore, that it conducted two executions and provided certifications and medical reports but that it did not retain copies for its records. Assuming that this representation is accurate, the Court observes that DOC's failure to inform Attorney Lesko that it provided some of the information requested to the court of common pleas demonstrates an attitude that is not in keeping with the spirit of the Right–to–Know Act.

Accordingly, the Court directs DOC to permit access to the information requested by Travaglia relating to witnesses. The Court otherwise affirms DOC's decision to deny Travaglia access to documents relating to lethal injection procedures.

### ORDER

AND NOW, this 29th day of July 1997, the denial by the Department of Corrections of requests on behalf of Michael J. Travaglia for access to records relating to the method of selecting witnesses and their identity and any recorded observations is reversed, and DOC is directed to comply with those requests. In all other respects the denial of access is affirmed.

