Robert Anthony LeGRANDE, Petitioner

v.

DEPARTMENT OF CORRECTIONS, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 8, 2006.

Decided March 30, 2007.

Robert Anthony LeGrande, petitioner, pro se.

Vincent R. Mazeski, Asst. Counsel and Suzanne N. Hueston, Acting Chief Counsel, Camp Hill, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

The Petitioner, Robert Anthony Le-Grande, pro se, challenges the order of the Department of Corrections (DOC) denying his request, under what is commonly referred to as the Right to Know Law

(Law),[1] to access DOC's Sentence Computation Procedures Manual (Manual). While LeGrande raises three issues before this Court, his first issue will ultimately be dispositive in this case: whether LeGrande's request to obtain the Manual falls within the ambit of a "public record" for purposes of Section 1 of the Law.

In April 2006, LeGrande sent a letter to Nelson Zullinger, DOC's Right–to–Know Officer, requesting copies of the Manual associated with DOC Policy 11.5.1, entitled "Records Office Operation." [2] (DOC Final Determination at 1, July 24, 2006, R. at 10.) Zullinger denied LeGrande's request in May 2006 and found the Manual, while arguably a public record, fell within the personal security exception under Section 1 of the Law, 65 P.S. § 66.1. LeGrande timely appealed Zullinger's decision to John Shaffer, DOC's Right–to–Know Exceptions Officer, arguing the Manual is subject to disclosure as a public record since it impacts both due process and liberty interests, and due to its public nature, the Manual does not implicate the personal security or reputation exceptions under the Law.

In response to LeGrande's appeal, Zullinger drafted a letter to Shaffer in June 2006, and admitted that Zullinger's office committed an error in its May 2006 decision by finding the Manual fell within the personal security exception. Zullinger now clarified that the Manual is not a public record, and "unlike virtually every other Procedures Manual, the reason that the [Manual] is not subject to the [Law] is that it is protected by the attorney work product doctrine and the attorney-client privilege." (Letter from Zullinger to Shaf-

fer, June 5, 2006, at 1, R. at 4.) In his letter, Zullinger also described the creation and content of the Manual, which we quote at length:

> The [Manual] in question was created by the Department's legal counsel to provide legal advice to the Department on an ongoing issue. The Department quite regularly makes determinations on sentencing, and the Manual was created by legal counsel to advise Department staff in understanding the laws in question. It simply contains the legal counsel's interpretation of sentencing law and legal advice as to how the law should be applied, as well as interpretations of relevant cases. Quite clearly, this Manual contains only the Department's legal counsel's mental impressions, legal research, conclusions and opinions respecting strategy and tactics, as well as their legal theories, for dealing with the calculation of inmate sentences.

(Letter from Zullinger to Shaffer, June 5, 2006, at 2, R. at 4.) Because of the initial error, Zullinger requested Shaffer to give LeGrande an additional opportunity to address the two new rationales of denial.

Subsequently, Shaffer issued an Interim Order outlining a timetable for LeGrande to respond to Zullinger's June 2006 letter before Shaffer issued a final determination. LeGrande agreed to the terms of the Interim Order and filed a timely response in July 2006. In his response, LeGrande argued that the Manual is not protected from disclosure by either the attorney-client privilege or the work product doctrine.

---

**1.** Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1—66.9.

**2.** As the basis for his request, LeGrande stated that he believed his "current sentence has

not been processed and/calculated [sic] according to DOC written policy...." (Letter from LeGrande to Zullinger, April 26, 2006, R. at 1.)

On July 24, 2006, Shaffer issued a final determination affirming the denial of Le-Grande's access to the Manual. Citing this Court's decision in *Arduino v. Borough of Dunmore*, 720 A.2d 827 (Pa. Cmwlth.1998), Shaffer determined that because legal opinions from attorneys in an advisory capacity are exempted from the definition of a public record under the Law, the Manual similarly does not amount to a public record. Further, Shaffer found the Manual amounts to attorney work product, which does not qualify as a public record, and LeGrande's assertion of waiver fails to apply here since a prior disclosure of the Manual cannot convert the Manual from being outside the reach of the Law to a record subject to the Law. Additionally, Shaffer determined the Manual is also protected under the attorney-client privilege. He recognized that Zullinger had a sufficient basis to invoke the privilege, and the record fails to support any waiver of the privilege. Lastly, Shaffer determined the burden of proof falls on LeGrande to demonstrate that disclosure of the Manual would not violate the attorney-client privilege. This petition for review followed.[3]

Generally, the Law mandates that "a public record shall be accessible for inspection and duplication by a requester in accordance with this [Law]." 65 P.S. § 66.2(a). Section 1 of the Law extensively defines the term "public record" and provides exceptions to the definition as well:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other

property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

65 P.S. § 66.1.

 The burden of proof is placed on the requesting party to establish that the documents sought are public records under the Law. *Rowland v. Public School Employees' Retirement System*, 885 A.2d 621, 627 (Pa.Cmwlth.2005), *petition for allowance of appeal denied*, 587 Pa. 703, 897 A.2d 462 (2006). To establish a particular item as a public record under Section 1 of the Law, the requesting party must demonstrate that it is: (1) developed by an

---

**3.** In cases arising under the Law, this Court reviews "whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence." *Rowland v.* *Public School Employees' Retirement System,* 885 A.2d 621, 626 n. 5 (Pa.Cmwlth.2005), *petition for allowance of appeal denied,* 587 Pa. 703, 897 A.2d 462 (2006).

agency covered by the Law; (2) a minute, order, or decision of a covered agency, or an essential component to an agency decision; (3) a document that fixes the personal rights, property rights, or duties of an individual or individuals; and (4) not otherwise protected by statute, order, or decree of court. *Id.* To effectuate appellate review, the agency must "provide sufficiently detailed information concerning the contents of the requested document to enable a reviewing court to make an independent assessment of whether it meets the statutory requirements for mandatory disclosure." *LaValle v. Office of General Counsel,* 564 Pa. 482, 499 n. 13, 769 A.2d 449, 459 n. 13 (2001). Here, the dispute surrounds factors (2) and (4); more specifically, the parties contest whether the Manual amounts to an essential component of DOC's sentencing computation or, assuming that it is, whether the Manual is otherwise protected by the work product doctrine or attorney-client privilege.

Before this Court, LeGrande argues that the Manual clearly constitutes an essential component of DOC's decision making regarding the implementation of sentencing. Because the Manual impacts the rights to due process and liberty, LeGrande claims the Manual does not fall under the enumerated exceptions of the Law. Further, LeGrande asserts the Manual is, in effect, an established policy which governs the actions of DOC officials, and such a policy does not implicate either the work product doctrine or the attorney-client privilege since it is no longer a deliberative document. Assuming the work product doctrine and the attorney-client privilege apply, LeGrande contends that DOC waived both protections when DOC previously released the Manual to a third

party. LeGrande also notes that DOC merely asserted the protections without properly establishing them. Lastly, LeGrande claims he is entitled to attorney fees and costs under Section 4.1 of the Law[4] since DOC acted willfully and, with wanton disregard, deprived LeGrande access to the Manual.

The Pennsylvania Supreme Court has elaborated on the definition of a public record and articulated what a requester must demonstrate in order to establish a "minute, order or decision" under the Law. In *North Hills News Record v. Town of McCandless,* 555 Pa. 51, 722 A.2d 1037 (1999), the Court held a requester "must demonstrate a close relationship between [the] requested material and an actual agency minute, order or decision fixing some right or duty." *Id.* at 58, 722 A.2d at 1040. The requester in *McCandless* sought to access an audio tape recording of a telephone call to an emergency center reporting a shooting. The requester claimed the audio tape formed the basis for the municipality's decision to dispatch emergency personnel and prosecute the perpetrator. *Id.* The Court rejected the requester's argument, holding that the connection between the conversation on the audio tape and the decision to dispatch services was "speculative and attenuated." *Id.* at 59, 722 A.2d at 1040. Further, the Court found the requester failed to demonstrate that the decision to dispatch services or to prosecute the perpetrator was predicated on the audio tape, or that the audio tape constituted an essential component of these decisions. *Id.*

Applying *McCandless,* this Court in *Berman v. Pennsylvania Convention Center Authority,* 901 A.2d 1085 (Pa.Cmwlth. 2006), *petition for allowance of appeal de-*

---

4. Act of June 21, 1957, P.L. 390, added by Section 6 of the Act of June 29, 2002, P.L. 663, 65 P.S. § 66.4–1(a).

*nied,* —— Pa. ——, 918 A.2d 748 (2007), rejected an individual's request to access construction plans for the Pennsylvania Convention Center. We held that information which "may have had some impact on an agency decision does not make it an essential component; [rather,] a document must be a basis for or a condition precedent of a decision." *Id.* at 1091. In other words, the agency could not have made the decision without the information at issue. *Heffran v. Department of Corrections,* 878 A.2d 985, 990 (Pa.Cmwlth.2005), *petition for allowance of appeal denied,* 586 Pa. 761, 895 A.2d 551 (2006).

In *LaValle,* the Court reemphasized its holding in *McCandless* and reiterated that "the party seeking to inspect government records must establish some close connection between one of the statutory categories and the material sought." *LaValle,* 564 Pa. at 493, 769 A.2d at 456. The requesters in *LaValle* sought a report from the Office of General Counsel (Office), prepared by an accounting consultant retained by the Office in connection with litigation against the Commonwealth. *Id.* at 486, 769 A.2d at 451. The Court held that, to the extent the report constitutes work product as embodied in Pennsylvania Rule of Civil Procedure No. 4003.3, the report would not qualify as a public record under the Law. *Id.* at 495, 769 A.2d at 457–58. The Court also characterized the work product doctrine, in this context, not as an exception to the Law, but as a limitation on the definition of public record itself:

> Under our interpretation, the character of the material as work product serves not as an exception to the disclosure of material which would otherwise qualify as accessible, in which case waiver principles might be pertinent, but rather, as a definitional limitation upon what would be accessible in the first instance. We find that, where records are not the *type* of materials within the [Law's] initial purview, waiver principles cannot be applied to transform them into records subject to its coverage.

*Id.* at 500, 769 A.2d at 460. The Court applied the definition of work product, embodied in Pa. R.C.P. No. 4003.3, which protects from disclosure:

> the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa. R.C.P. No. 4003.3; *see also LaValle,* 564 Pa. at 495, 769 A.2d at 457.[5]

Similarly, in *Arduino,* this Court held that a legal opinion by an attorney for the sole purpose of rendering advice and assistance to the agency does not, by its definition, become an essential component of a decision, and therefore, a legal opinion is entirely exempted from the definition of a public record under the Law. *Arduino,* 720 A.2d at 830–31.

■ Here, LeGrande failed to initially demonstrate that the Manual amounted to an essential component of DOC decisions regarding the implementation of sentences. According to Zullinger, DOC's legal counsel created the Manual in order to assist DOC staff in determining sentencing

---

5. Notably, the Court in *LaValle* points out that the disclosure of federal documents is subject to an even broader exemption because the federal Freedom of Information Act contains "an express exception for deliberative aspects of agency decision making." *LaValle,* 564 Pa. at 496 n. 12, 769 A.2d at 457 n. 12; *see* 5 U.S.C. § 552(b)(5).

and understanding the application of relevant sentencing law. Such advice and assistance does not sufficiently establish the close relationship required under *McCandless* and *LaValle* between the Manual and the ultimate implementation of sentencing orders from the trial court. Further, the Manual, which essentially serves as a reference tool, does not become a basis or a condition precedent of DOC's implementation of sentencing. The decision regarding the implementation of sentencing does not solely depend on information contained in the Manual, and the implementation and calculation of sentencing may very well occur in the absence of the Manual. Given this attenuated relationship, the Manual is not an essential component of the implementation of sentencing and, therefore, fails to qualify as a public record under the Law.

 Even if LeGrande had properly established that the Manual constituted an essential component of sentencing decisions, LeGrande's appeal would still be denied because the Manual does not fall within the definition of a public record under the Law. Instead, the Manual falls under the rubric of attorney work product since it contains the mental impressions of DOC attorneys regarding legal research and legal theories of sentencing law. Under *LaValle*, the Manual is, by definition,

not a public record. In providing recommendations and advice on the state of sentencing law, the Manual is a legal opinion created by DOC attorneys and, under *Arduino*, is also exempted from the definition of a public record.[6] Further, even if DOC previously disclosed the Manual to a third party, DOC's prior disclosure would not convert the Manual into a public record. In *LaValle*, the Court determined that since work product does not fall under the definition of a public record, waiver principles simply do not apply. A waiver cannot transform a document, which is by definition not a public record, into a document that comports to the very same definition. *LaValle*, 564 Pa. at 500, 769 A.2d at 460 ("[T]he character of the material as work product serves not as an exception to the disclosure of material which would otherwise qualify as accessible, in which case waiver principles might be pertinent, but rather, as a *definitional limitation* upon what would be accessible in the first instance. We find that, where records are not the *type* of materials within the [Law]'s initial purview, waiver principles cannot be applied to transform them into records subject to its coverage.") Similarly, since the Manual here is attorney work product, waiver principles do not apply.

Because the Manual is not considered a public record under the Law,[7] we need not

---

6. Because we conclude that the Manual is exempted from the definition of a public record by virtue of being work product as well as a legal opinion, we need not determine whether the attorney-client privilege, as articulated by Shaffer, serves as a similar definitional limitation to public record under the Law.

7. LeGrande initially based his request on the belief that his "current sentence has not been processed and/calculated [sic] according to DOC written policy...." (Letter from LeGrande to Zullinger, April 26, 2006, R. at 1.) We note in passing, however, that even assuming LeGrande is correct in his contention,

he would still be unable to obtain any meaningful remedy through DOC. DOC is *not* an adjudicative body, but rather, an executive agency charged with "faithfully implementing the sentences imposed by the courts." *Detar v. Beard*, 898 A.2d 26, 30 (Pa.Cmwlth.2006). DOC may not determine the legality of the sentences, alter the conditions of sentences, or recalculate sentences without a court order. *Id.* Here, the Manual simply provides a guide for DOC to determine how to *implement* court-ordered sentences governed by statutory and decisional law. Whether or not DOC calculated LeGrande's sentence in accordance with the Manual does not affect,

reach LeGrande's argument regarding entitlement to attorney fees and costs under Section 4.1 of the Law.[8]

We recognize the salutary purposes underlying the Law in promoting the transparency and accountability of government. *Newspaper Holdings, Inc. v. New Castle Area School District*, 911 A.2d 644, 649 n. 11 (Pa.Cmwlth.2006) ("[T]he purpose of access is to keep open the doors of government, to prohibit secrets, to scrutinize the actions of public officials and to make public officials accountable in their use of public funds.") With these intentions in mind, this Court is bound, nonetheless, by the definitional limitations found within the statutory language of the Law itself, as set out by the General Assembly and interpreted by the Pennsylvania Supreme Court. *See LaValle*, 564 Pa. at 494, 769 A.2d at 456.

Accordingly, we affirm the order of DOC.[9]

### *ORDER*

**NOW,** March 30, 2007, the order of the Department of Corrections in the above-captioned matter is hereby **AFFIRMED.**

---

what we believe, is LeGrande's ultimate strife: whether LeGrande's sentence is properly calculated under Pennsylvania law.

8. Section 4.1(a) of the Law provides:
 Reversal of agency determination. If a court reverses an agency's final determination, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:
 (1) the agency willfully or with wanton disregard deprived the requester of access to a public record subject to access under the provisions of this act; or
 (2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.
 65 P.S. § 66.4–1(a).

9. The Dissent disagrees with our holding and finds "the manner in which DOC performs its

### DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

As noted by the Pennsylvania Supreme Court, DOC "[i]s an executive branch agency that is charged with faithfully implementing sentences imposed by the courts. As part of the executive branch, [DOC] lacks the power to adjudicate the legality of a sentence or to add or delete sentencing conditions." *McCray v. Pennsylvania Department of Corrections*, 582 Pa. 440, 450, 872 A.2d 1127, 1133 (2005). Indeed, an inmate possesses a protected liberty interest to be free from wrongful, prolonged incarceration, and the violation of this interest implicates both the Eighth Amendment's proscription against cruel and unusual punishment and the Fourteenth Amendment's due process guarantees. *See, e.g., Davis v. Hall*, 375 F.3d 703 (8th Cir.2004); *Sample v. Diecks*, 885 F.2d 1099 (3rd Cir.1989).

To this end, Section V of DOC Policy Number 11.5.1[1] states that "[i]t is the

---

mandatory duty of interpreting and executing sentencing orders, affecting the constitutional and statutory rights of innumerable inmates, clearly constitutes a 'public record' under the Law," citing *Travaglia v. Department of Corrections*, 699 A.2d 1317 (Pa.Cmwlth.1997), for support. Dissenting Slip Op. at 3. However, the Dissent overlooks the Pennsylvania Supreme Court's subsequent holding in *LaValle* upon which we rely. The Dissent's reliance on *Travaglia* fails to alter our analysis because that case, involving lethal injection procedures, did not involve attorney work product. Furthermore, the Court in *Travaglia* did **not** order the disclosure of those documents because they fell under the statutory exception for personal security. *Travaglia*, 699 A.2d at 1321–22.

1. An agency's statement of policy has persuasive, but not binding, power if it tracks the meaning of the related statute. *E.D. v. De-*

policy of [DOC] to maintain an accurate and up-to-date inmate record system that meets the needs of [DOC] in providing a base for its statistical system and in maintaining inmate sentence structures that comply with the mandates of the Court and the Commonwealth's Sentencing Rules, Regulations, and Laws." Accordingly, as stated in Section II, DOC promulgated Policy Number 11.5.1 to establish "[p]olicy and procedures for the operation of the inmate records office and the maintenance of inmate records in [DOC]." Moreover, Section III of Policy Number 11.5.1 specifically states "[t]his policy is applicable to all inmates and staff in all [DOC] facilities...." It was within this context and, under these provisions, that DOC developed the instant Sentence Computation Procedures Manual (Manual).

In short, in affirming DOC's determination in this case, the Majority determines that the Manual does not constitute a "public record", as defined in Section 1 of the statute commonly referred to as the Right to Know Law (Law)[2], because:

"[T]he Manual falls under the rubric of work product since it contains the mental impressions of DOC attorneys regarding legal research and legal theories of sentencing law. Under *LaValle[ v. Office of General Counsel*, 564 Pa. 482, 769 A.2d 449 (2001) ], the Manual is, by definition, not a public record. In providing recommendations and advice on the state of sentencing law, the Manual is a legal opinion created by DOC attorneys and, under *Arduino[v. Borough of Dunmore*, 720 A.2d 827 (Pa.Cmwlth. 1998) ], is also exempted from the definition of a public record...."

Majority Opinion at 949 (footnote omitted).

However, the instant Manual, outlining the manner in which DOC performs its mandatory duty of interpreting and executing sentencing orders, affecting the constitutional and statutory rights of innumerable inmates, clearly constitutes a "public record" under the Law. *See, e.g., Travaglia v. Department of Corrections,*

---

*partment of Public Welfare*, 719 A.2d 384 (Pa. Cmwlth.1998). Thus, a "policy statement" is the agency's statutory interpretation which a court may accept or reject depending upon how accurately the agency's interpretation effectuates the meaning of the statute. *Chimenti v. Pennsylvania Department of Corrections*, 720 A.2d 205 (Pa.Cmwlth.1998), *aff'd per curiam*, 559 Pa. 379, 740 A.2d 1139 (1999).

2. Act of June 21, 1957, P.L. 390, as amended, 65 P.S. § 66.1. Specifically, Section 1(2) of the Law defines "public record" as follows: (2) "Public Record." Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" shall not mean any report, communi-

cation or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, *except those reports filed by agencies pertaining to safety and health in industrial plants*; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.
65 P.S. § 66.1(2).

699 A.2d 1317, (Pa.Cmwlth.), *petition for allowance of appeal denied,* 550 Pa. 713, 705 A.2d 1313 (1997) ("DOC has acknowledged that it has a manual, which it regards as confidential, that describes in detail the actual procedures for lethal injection and also the attendant security measures. Details of the procedures by which DOC implements lethal injection necessarily affect the statutory and constitutional rights of the condemned.... Because most of the information Travaglia requests concerning implementation of executions affects constitutional and statutory rights, the [Law] defines it to be a 'public record' that any citizen has a right to inspect, unless some statutory exception applies. DOC asserts that documents relating to the technique and manner of the lethal injection procedures are not within the general definition of public records because they set guidelines and goals, not obligations for its personnel.... The Court, however, rejects the notion that an agency may avoid disclosure of materials relating to performance of its mandatory duties by characterizing them as 'suggestions' or 'goals' that do not 'fix' any rights or duties of its personnel.").[3],[4]

3. It should be noted that, in *Travaglia,* this Court ultimately determined that the requested information should not be disclosed due to security and public health concerns. *See Id.* at 1322.

4. The Majority attempts to distinguish the application of this Court's holding in *Travaglia* on the basis that the Supreme Court's subsequent opinion in *LaValle* somehow affects its authority. However, the instant Manual was the final product of the deliberative process within the operations of DOC. Under the explicit provisions of Policy Number 11.5.1, the Manual is applicable to all DOC employees and directs them on how to perform their mandatory duties. As a result, in light of the *LaValle* opinion, the Manual should be deemed to be a "public record" under the relevant provisions of the Law. *See, e.g., Tribune–Review Publishing Company v. Department of Community and Economic Development,* 580 Pa. 80, 92, 859 A.2d 1261, 1269 (2004) ("For the deliberative process privilege to apply, certain requirements must be met. First, the communication must have been made before the deliberative process was completed. Secondly, the communication must be deliberative in character. It must be 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.' [*Commonwealth ex rel. Unified Judicial System v. Vartan,* 557 Pa. 390, 401, 733 A.2d 1258,] 1263–1264 (internal quotations and citations omitted)."). *See also Coastal States Gas Corporation v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980) ("In deciding whether a document should be protected by the privilege[, under the relevant provisions of the federal Freedom of Information Act, 5 U.S.C. 552(b)(5),] we look to whether the document is 'predecisional' whether it was generated before the adoption of an agency policy and whether the document is 'deliberative' whether it reflects the give-and-take of the consultative process. The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position. To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency; 'Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision making process.' We also ask whether the document is recommendatory in nature or is a draft of what will become a final document, and whether the document is deliberative in nature, weighing the pros and cons of agency adoption of one viewpoint or another. Finally, even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the

Accordingly, unlike the Majority, I would reverse the order of DOC.

*agency in its dealings with the public.") (cita-* tion omitted).