Roger BUEHL, Petitioner

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 23, 2008.

Decided Aug. 14, 2008.

Roger Buehl, petitioner, pro se.

Robert B. MacIntyre, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for respondent.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

Roger Buehl petitions for review of the final determination of the Pennsylvania Department of Corrections (Department) denying Buehl's request for access to certain documents under the statute commonly known as the Right–to–Know Law.[1] Specifically, Buehl sought documents that would explain the Department's definition of "inclement weather." In this appeal, we consider whether the Department properly denied Buehl's request by relying upon the personal security exception in the Right–to–Know Law.[2]

Buehl is currently incarcerated at SCI–Smithfield. Section 1 of the Act of June 14, 1923, P.L. 775 (Prison Exercise Act), *as amended*, 61 P.S. § 101,[3] provides that prisoners not in segregation or on disciplinary status are entitled to daily outdoor exercise for two hours, weather permitting. During days on which the "weather is inclement," daily exercise is to take place indoors. *Id.* The Act itself does not define the term "inclement weather." The Department's standards for determining "inclement weather" are not published or available to the public.

Claiming that outdoor exercise was regularly and unjustifiably cancelled,[4] Buehl

---

1. Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.4, repealed by Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104, effective January 1, 2009.

2. The personal security exception, found in the definition of "Public record" in Section 1 of the Right–to–Know Law, states: "Public record ... shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper ... which would operate to the prejudice or impairment of a person's reputation or *personal security*." 65 P.S. § 66.1 (emphasis added).

3. Section 1 of the Prison Exercise Act, entitled "Physical exercise for prisoners," reads as follows:

 Every warden, board of prison managers, prison inspectors, or any other person in authority, in charge of any prison or penitentiary, who may or shall have in charge any person confined therein whether such person be a tried or an untried prisoner, *shall provide that such person shall have at least two hours daily, physical exercise in the open, weather permitting, and upon such days on which the weather is inclement, such person shall have two hours, daily, of physical exercise indoors* of such prison or penitentiary: Provided, however, The same is safe and practical, and the judges of the several courts are to be the judges thereof. Prisoners in segregation or disciplinary status shall receive a minimum of at least one hour of daily exercise five days per week. 61 P.S. § 101 (emphasis added).

4. Appellant claims that SCI–Smithfield has routinely cancelled outside exercise due to weather conditions that one would not typically consider inclement, such as light rain,

grieved to SCI–Smithfield officials, who cited "inclement weather" as the basis for the cancellations. On September 3, 2007, Buehl filed a request with the Department's Right–to–Know Officer for, *inter alia*, a copy of any policy, procedure or guideline defining "inclement weather" for purposes of deciding whether to cancel outdoor yard periods. The Right–to–Know Officer responded on October 19, 2007, but did not provide Buehl the requested definition of "inclement weather." Buehl repeated his request on October 23, 2007, which the Department denied on November 13, 2007, citing the personal security exception in the Right–to–Know Law. According to the Department, inmates or other persons could use the "inclement weather" definition to circumvent or manipulate prison procedures and impair the safety and security of correctional institutions, staff, and inmates.

On November 20, 2007, Buehl filed exceptions with the Department's Right–to–Know Law Exceptions Unit. In a final determination dated December 18, 2007, the Right–to–Know Law Exceptions Officer affirmed the decision of the Right–to–Know Officer, denying Buehl's request for access to the definition of "inclement weather." Buehl now petitions for this Court's review.

■■■ On appeal,[5] Buehl contends that the Department erred in applying the personal security exception in the Right–to–Know Law to deny him access to a copy of whatever Department document defines "inclement weather" and is used to deter-

mine the location of inmates' daily exercise in accordance with Section 1 of the Prison Exercise Act. Buehl argues that the Department's invocation of the personal security exception lacks foundation because knowledge of the Department's definition of "inclement weather" could not be used to effect a security breach at SCI–Smithfield. Throughout his brief, Buehl stresses that he is seeking only the definition of "inclement weather" and not the operational or policy manuals where that definition may be located.

■■■ As a general rule, Section 2 of the Right–to–Know Law provides access to any public record upon request.[6] 65 P.S. § 66.2. However, Section 1 of the Right–to–Know Law excludes from disclosure any record that might impair a person's personal security. 65 P.S. § 66.1. This Court has defined personal security as "freedom from harm, danger, fear or anxiety." *Travaglia v. Department of Corrections*, 699 A.2d 1317, 1322 (Pa.Cmwlth. 1997). The Supreme Court of Pennsylvania has explained that the appropriate question in applying the personal security exception is "whether the records requested ... would potentially impair the personal security of [another] and *whether that potential impairment outweighs* the public interest in the dissemination of the records." *Sapp Roofing Company, Inc. v. Sheet Metal Workers' International Association, Local Union No. 12*, 552 Pa. 105, 110–11, 713 A.2d 627, 629 (1998) (emphasis added). Therefore, in any case involving the personal security exception, a security interest in non-disclosure must be identi-

---

drizzle, and overcast skies, and that such practice is inconsistent with the operation of other state correctional institutions.

**5.** Our standard of review in a Right–to–Know Law case is whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence.

*Inkpen v. Roberts*, 862 A.2d 700, 702, n. 3 (Pa.Cmwlth.2004). The scope of review for a question of law is plenary. *Id.*

**6.** We note that the Department does not contest the status of the "inclement weather" definition as a public record.

fied and then balanced against the public interest in dissemination of the requested records.

 We begin by considering whether disclosure of the "inclement weather" definition would impair the personal security of another. A relevant inquiry in determining the weight to be afforded a claimed personal security interest is whether the particular disclosure is "intrinsically harmful." *Pennsylvania State University v. State Employees Retirement Board*, 594 Pa. 244, 263, 935 A.2d 530, 541 (2007).[7] To be intrinsically harmful, the requested record must itself operate to impair the personal security of another, and not merely be capable of being used with other information for harmful purposes. *Times Publishing Co., Inc. v. Michel*, 159 Pa.Cmwlth. 398, 633 A.2d 1233, 1239 (1993).[8] If a particular disclosure is not intrinsically harmful, concerns about personal security are more likely to be outweighed by the public interest in dissemination of the information.

Buehl asserts that knowledge of the Department's "inclement weather" definition is not intrinsically harmful. Inmates exercise on a predictable, scheduled basis; the condition of the weather merely determines whether the daily exercise will take place inside or outside. Buehl also argues that there is a legitimate public interest in ensuring that a state agency complies with statutory mandates, and that the Department is withholding the definition of "inclement weather" in an effort to prevent possible legal action by inmates not allowed to exercise outdoors, as required by Section 1 of the Prison Exercise Act, when weather is not inclement.

The Department counters that disclosing its definition of "inclement weather" to inmates would enable them to determine when outdoor yard time will be cancelled, and thus could assist inmates or other persons in planning an escape; in planning an attack on a corrections officer or fellow inmate; or in organizing other illicit activity detrimental to prison security. In support, the Department cites to two prior decisions of this Court, *Bargeron v. De-*

---

**7.** In *Pennsylvania State University*, the Pennsylvania Supreme Court granted the release of salary and related information of various Pennsylvania State University employees to the news media. In doing so, the Supreme Court reiterated that the proper analysis is the balancing test set forth in *Sapp Roofing* and abrogated this Court's earlier decision in *Moak v. Philadelphia Newspapers, Inc.*, 18 Pa. Cmwlth. 599, 336 A.2d 920 (1975), which held that the sole determinative factor under the personal security exception is whether the public records would be intrinsically harmful if disclosed. However, the Supreme Court stated that the "intrinsically harmful" standard from *Moak* remains a relevant factor in determining the weight given to the privacy interest to be balanced against any public interest served by dissemination. Pennsylvania State University, 594 Pa. at 263, 935 A.2d at 541. Additionally, although Pennsylvania State University dealt with a right to privacy issue, the Supreme Court stated, "[w]hile Ap-

pellants invite this Court to separate our right to privacy analysis from our personal security exception analysis, it is clear that no such division is warranted." *Id.* at 259, 935 A.2d at 538. Thus, the holding in *Pennsylvania State University* applies to the instant case.

**8.** In *Times Publishing*, a reporter requested access to written applications pertaining to licenses to carry firearms issued by an individual sheriff. This Court granted limited access to the documents, including the applicant's name, race, reason for requesting the license, personal references, and responses to background questions; we refused to disclose the applicant's address and social security number. *Times Publishing*, 633 A.2d at 1239. We held that the information was protected under the personal security exception, stating that access to addresses and social security numbers would constitute an invasion of privacy that would outweigh any public interest in dissemination. *Id.*

partment of Labor and Industry, 720 A.2d 500 (Pa.Cmwlth.1998), and Weaver v. Department of Corrections, 702 A.2d 370 (Pa. Cmwlth.1997), where information was withheld for personal security reasons.

In Bargeron, an attorney requested access to a list containing the names and addresses of parties involved in unemployment compensation litigation for the purpose of soliciting business. Even though this Court held that the appellant had not shown the requested documents to be public records, we went on to hold that the personal security exception would otherwise have prevented disclosure. Bargeron, 720 A.2d at 503. Applying the balancing test, we found that disclosure would constitute an invasion of personal privacy because the list included the addresses and social security numbers of claimants and employers,[9] and that dissemination of the information would not further any public interest. Id. at 504.

In Weaver, an inmate sought release of the Pennsylvania Additive Classification Tool (PACT) Manual used by the Department to assess inmates to determine the "level of danger posed by or to the inmate or the prison staff." Weaver, 702 A.2d at 372–373. Because the Department considers certain personality traits exhibited by the inmates when making this assessment, this Court found that an inmate with knowledge of the criteria used could manipulate the Department's assessment, to

the danger of both staff and inmates. Id. at 373. Indeed, this Court concluded that the PACT Manual was used to make "the most critical decision regarding a prisoner—what level of custody is appropriate regarding an assessment of the individual." Weaver, 702 A.2d at 372. We therefore affirmed the Department and denied release of the PACT Manual.

Bargeron and Weaver are distinguishable. Unlike Bargeron, where the requested records contained addresses and social security numbers—which could be used directly to invade the personal privacy of another—the definition of "inclement weather" does not implicate privacy or personal security in any way. We agree with Buehl that disclosure of the definition of "inclement weather" would not be "intrinsically harmful." Likewise, this is not a Weaver situation. Unlike the PACT Manual, which could be used by inmates to manipulate their level of custody by faking personality traits, weather is beyond the ability of inmates to manipulate. "Inclement weather" is objectively based. On any given day all staff and all inmates ought to be able to know, and indeed agree, on whether exercise will take place indoors or outdoors.

This Court has recognized that some speculation is attendant to a discussion of the personal security exception in the Right-to-Know Law.[10] Here, however, the

---

**9.** The Supreme Court of Pennsylvania and this Court have consistently held that addresses and social security numbers are not releasable due to the personal security exception in the Right-to-Know Law. See Sapp Roofing Company, Inc. v. Sheet Metal Workers' International Association, Local Union No. 12, 552 Pa. 105, 713 A.2d 627 (1998); Tribune–Review Publishing Company v. Allegheny County Housing Authority, 662 A.2d 677 (Pa.Cmwlth. 1995); Times Publishing Company, Inc. v. Michel, 159 Pa.Cmwlth. 398, 633 A.2d 1233, 1239 (1993).

**10.** In Travaglia v. Department of Corrections, 699 A.2d 1317 (Pa.Cmwlth.1997), this Court denied an inmate serving on death row access to information pertaining to the legal injection method of execution. Recognizing that some speculation must be entertained, we agreed with the Department that disclosure of the precise substances and dosages and security measures used in lethal injections could result in widespread dissemination of dangerous information to the public, and could be used by inmates to attempt to frustrate the lethal injection process. Id. at 1322. Howev-

Department offers no assistance in this regard by providing specific examples of how inmates could use the Department's definition of "inclement weather" to engineer a prison escape. The Department offers only conclusory and alarmist statements of potential harm. In effect, the Department asks that we assume a connection between disclosure of the Department's definition of "inclement weather" and the potential for impaired prison or personal security.

Assuming, however, disclosure raises some, albeit small and ill-explained, personal security interest, this requires that we next consider the potential public interest in dissemination of the definition of "inclement weather." As the Supreme Court held in Pennsylvania State University, "courts may not forgo the balancing of interests where [personal security] and public interest conflict." *Pennsylvania State University*, at 264, 935 A.2d at 541. Buehl submits that there is a strong public interest in ensuring that the Department complies with its statutory mandate in Section 1 of the Prison Exercise Act to provide prisoners at SCI–Smithfield with two hours of outdoor yard time each day. We agree.[11]

■ The Right–to–Know Law was "designed to permit the scrutiny of the acts of public officials and to make them accountable for their use of public funds." *Current Status, Inc. v. Hykel*, 778 A.2d 781, 784 (Pa.Cmwlth.2001). The public has an interest in ensuring that every state agency complies with its statutory mandates, such as that imposed upon the Department in the Prison Exercise Act. The legislature set forth the guidelines for providing prisoners with physical exercise, but left it to the discretion of the Department to apply those statutory guidelines, including those relating to inclement weather. Underlying Buehl's request for the "inclement weather" definition is an allegation that the Department has abused this discretion.

■ When determining the weight of any public interest, the extent to which a particular disclosure would actually serve to further that public interest is an important factor. In *Sapp Roofing*, a labor union requested access to the payroll records of a school district for the stated purpose of ensuring the school district complied with prevailing wage requirements. In addition to wage information, the payroll records contained personal information, such as names, addresses, social security numbers, and phone numbers of employees. The Supreme Court of Pennsylvania refused to release the personal information stating, "disclosure . . . reveals little, if anything, about the government's . . . compliance with the Prevailing Wage Act." *Sapp Roofing*, at 112, 713 A.2d at 630. It did, however, allow disclosure of payroll information in redacted form.

Unlike *Sapp Roofing*, the public interest in the case *sub judice* would be advanced by disclosure of the Department's standards for determining "inclement weather" because prison officials may cancel outdoor exercise only on days that the "weather is inclement." 61 P.S. § 101. The starting point of measuring compliance with this statutory rule is the Department's definition of "inclement weather." We therefore

---

er, this Court did grant the inmate access to the identity of both past and future witnesses, absent a showing that the witness was given some guarantee of confidentiality. *Id.* at 1323.

11. Although we agree that disclosure could serve the public interest in ensuring the Department complies with its statutory mandates, we make no judgment on Buehl's claim that SCI–Smithfield has continuously and unjustifiably cancelled outdoor exercise.

agree with Buehl that the public interest favors disclosure of the requested records.

In sum, we conclude that, on balance, the speculative security concerns of the Department are outweighed by the public interest in dissemination of the record requested by Buehl. The "inclement weather" definition is not the type of information that could be used, in itself, to effectuate a security breach, and disclosure would serve the public interest in ensuring that the Department complies with the mandate set forth in Section 1 of the Prison Exercise Act. Accordingly, the final determination of the Department is reversed and the Department is directed to provide Buehl with access to the "inclement weather" definition.[12]

### ORDER

AND NOW, this 14th day of August, 2008, the order of the Pennsylvania Department of Corrections dated December 18, 2007, in the above-captioned case is hereby REVERSED.

12. This does not mean, of course, that the Department must supply the relevant document without redaction. Redaction is expressly authorized by Section 3.2 of the Right–to–Know Law, Act of June 21, 1957, P.L. 390, *as amended*, added by Section 4 of the Act of June 29, 2002, P.L. 663, 65 P.S. § 66.3–2.